June D. PIPER, as Mother and Guardian of Matthew D. Durran, a Minor, Appellee,

v.

UNITED STATES of America, Appellant.

No. 88–2612.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1989.

Decided Oct. 10, 1989.

Rick Richmond, Washington, D.C., for appellant.

William F. Sherman, Little Rock, Ark., for appellee.

Before BEAM, Circuit Judge, HEANEY and BRIGHT, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

The United States appeals the district court's judgment awarding damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1982), for dog-bite wounds sustained by Matthew Durran, age eleven, while residing on a military base. The district court held the Government liable for the negligence of a servicemember, TSgt. Robert Williams, who permitted his dog to run free in violation of regulations promulgated by the Little Rock (Arkansas) Air Force Base.[1] The district court ruled that Williams' responsibility to control his pet was within the scope of his employment in the military and rendered the United States liable on a respondeat superior theory. On appeal the United States asserts that TSgt. Williams did not act within the scope of his employment when he neglected to keep his dog under control at his personal residence. We agree with the Government's position and reverse and vacate the judgment, but remand for a determination of whether other grounds exist to support the award of damages.

## I. BACKGROUND

At the time of the incident, Matthew Durran lived with his mother, June Piper, a National Guard enlisted person, at Little Rock Air Force Base (LRAFB). TSgt. Robert Williams, the owner of a large Airedale dog named Arby, lived nearby.

On the afternoon of January 18, 1986, Matthew returned from school on the bus and saw Arby in his backyard, sitting at the rear patio glass door and barking at the dogs in the house. Matthew called for the dog to follow him towards its own home. The dog attacked Matthew, knocked him to the ground and bit him on the forehead and around the scalp. The school bus driver, witnessing the incident, sounded her horn and the dog ran away. The bus driver then administered first aid to Matthew and called for an ambulance.

Matthew suffered considerable pain during and after the attack. He received several lacerations and puncture wounds on his head requiring treatment and approximately eight follow-up visits. The attack left scars on Matthew's head and resulted in some temporary emotional damage.

The attack on Matthew did not represent Arby's first attack upon a person nor the dog owner's first failure to control the dog. On January 11, 1985, one year prior to the attack on Matthew, airbase security police found Arby running at large and cited TSgt. Williams for failing to control his dog. As a result, the commanding officer verbally counseled TSgt. Williams on the need to control his pet.

On January 26, 1985, Arby bit three-year old LeChelle Stimson through the nose while she visited in TSgt. Williams' home. Although no one witnessed the incident, LeChelle's father told the security police that the dog bit the child when she pulled its whiskers. TSgt. Williams again received verbal counseling on the need to control his dog, but the security police did not report the incident as a nuisance, relying on the father's statement that LeChelle had provoked the dog.

On March 30, 1985, Arby bit one of Williams' sons at the Williams' home. Williams reported this incident to the base

---

**1.** The opinion of the district court is reported. *Piper v. United States,* 694 F.Supp. 614 (E.D.Ark. 1988).

veterinarian who recorded it in a log book, but took no further action. The district court found that the veterinarian did not report the incident to security police because the veterinarian considered the incident a private matter.

Base regulations permit pets on the base as long as they do not become a nuisance, are not allowed to run free and are under the control of the owner at all times. LRAFB Regulation 125–2 (May 20, 1981). The base commander, security police and pet owner share responsibility for enforcing this regulation. The regulation further requires that any pet reported twice as a nuisance be removed from the base. Evidence in the record also suggests that emergency room personnel are required to report all dog-bite incidents to the security police, but the district court made no specific finding in this regard.

The district court found that Arby did not habitually run free, but noted that the evidence conflicted on this point. The court also found that except for the three biting incidents, no evidence indicated that the dog had exhibited aggressive or vicious tendencies.

Matthew's mother, who brought the suit on behalf of Matthew, argued that the Government was liable under the FTCA, on either of two theories. First, Mrs. Piper contended that TSgt. Williams had acted negligently in the line of duty by failing to maintain control over Arby. Second, Mrs. Piper contended that airbase personnel responsible for maintaining order on the base had negligently permitted Arby to remain on the base when they knew or should have known of his dangerous propensities.

After a three-day bench trial, the district court found for Matthew and entered an award of damages in the amount of $9,600. As we have already mentioned, the court held TSgt. Williams acted in the line of duty because base regulations delegated to him the duty to control his dog. The district court relied on *Lutz v. United States*, 685 F.2d 1178 (9th Cir.1982), a factually similar case, for this proposition of law. The trial court determined that violation of LRAFB Regulation 125–2 (relating to con-

trol of pets) by Williams amounted to negligence in the line of duty and held the United States liable under the FTCA. The district court did not decide whether the United States could be liable for the negligence of other airbase personnel in duties relating to control of animals.

## II. DISCUSSION

While this case factually resembles the *Lutz* case, we decline to follow it. Instead, we adopt the reasoning of another similar case, *Nelson v. United States*, 838 F.2d 1280 (D.C.Cir.1988), where the court held that an owner's failure to control his pet dog did not occur in the line of duty.

As a preliminary matter, we observe that the FTCA waives the Government's immunity to suit only for personal injuries caused by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). Military employees are within the scope of employment when they act in "the line of duty." 28 U.S.C. § 2671. "Line of duty" takes its meaning from the applicable state law of respondeat superior. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). Under Arkansas law an employee acts within the scope of employment or in the line of duty when he acts for his employer's benefit or furthers his employer's interest. *Orkin Exterminating Co. v. Wheeling Pipeline, Inc.*, 263 Ark. 711, 567 S.W.2d 117 (1978).

Borrowing the rationale from the *Lutz* case, the district court reasoned that TSgt. Williams had been delegated a duty to control his dog because of regulations relating to control of pets and because violation of these regulations subjects servicemembers to discipline. That court concluded that Williams' failure to control the dog therefore occurred in the line of duty.

This reasoning will not stand. Military bases regulate a wide variety of subjects, some of them trivial, such as housekeeping. It stretches the statute too far to say that any act or omission by a servicemember, if covered by a regulation, represents conduct in the line of duty. *Nelson*, 838 F.2d at 1283–84. In this case and in many cases,

connection between the duty imposed by the regulation and military service is far too tenuous to conclude that the FTCA applies. As the District of Columbia Circuit observed:

> Under *Lutz*, all duties imposed by military regulation, no matter how trivial, could fall within the serviceman's line of duty and thus within the employer-employee relationship. In the unique context of life on a military base, however, the government is much like an old-fashioned "company town." Within this multi-faceted relationship, the military imposes many duties on military personnel, not all of which are plausibly viewed as imposed by the government in its role as employer.
>
> Bolling Air Force Base regulations, for example, require base residents to use certain size pots and pans, to replace electrical fuses, and to refrain from smoking in bed. These duties are not imposed by the military in its role as an employer and they do not run to the employer's benefit. Rather, they are incidental regulations designed to ensure that the base functions under conditions of common consideration and orderliness that enhance community life; as such, they are designed to benefit all residents of the housing community. Because such duties, although established by military regulations, do not run to the benefit of the employer and are linked only incidentally with the employment relationship, they cannot be said to be discharged within the scope of employment.

*Id.* at 1283–84. We believe this analysis is sound and adopt it. Accordingly, the United States is not derivatively liable under the FTCA for negligence on the part of TSgt. Williams.

 There is, however, another theory on which the Government might be liable. The district court heard evidence but did not decide whether other air base personnel negligently performed their duties. *Cf. Nelson*, 838 F.2d 1284–87. We cannot say from the record before us whether the commanding officer, security police or the veterinarian knew or should have known of the potential threat posed by Arby. On remand, however, the district court should decide this issue on the present record or it may permit the parties to introduce additional evidence on this issue.

### III. CONCLUSION

Accordingly, we reverse the judgment of the district court and remand for a determination of whether there are other grounds to support the award of damages in favor of Matthew.