Gail S. **BROTKO** and Mark C. Brotko, Individually and as next friends of Jillian M. Brotko, A Minor, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 89–0006.

United States District Court, D. Rhode Island.

Dec. 7, 1989.

Marty C. Marran, Pawtucket, R.I., for plaintiffs.

Michael P. Iannotti, Asst. U.S. Atty., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on the motion of defendant, United States of America, for summary judgment and the plaintiffs' motion for partial summary judgment.

Gail and Mark Brotko initiated this action individually and as next friends of their daughter, Jillian Brotko, after she received injuries from a dog bite. The Brotkos and the dog's owner, Brian Martinez, resided in housing owned and leased to them by the U.S. Navy. The Brotkos base their claims on the Federal Tort Claims Act (FTCA), charging the government with responsibility for Jillian's injuries. The government contends. that as a matter of law it is not liable under the FTCA applying Rhode Island tort law to the undisputed facts of this case. Plaintiffs argue that, as a matter of law, they are entitled to summary judgment on the issue of liability, leaving only damages to be resolved by trial.

## BACKGROUND

Brian Martinez and the Brotko family at the time in question lived in Navy housing in Middletown, Rhode Island. Martinez owned a dog named Chester which he often left tied to a stake outside of his residence. The Navy imposes regulations on the residents of Navy housing who own pets. One regulation requires dog owners "to restrain their dogs * * * within their yards or on leashes in public common areas. Dogs * * * will not be permitted to become a menace, nuisance, or sanitary problem within the housing area." NETCNPT/LOCAL AREA RI COORDINST 11101.5A. The Navy regulations also provide that "the maintenance of law and order in housing. areas is the responsibility of the ... Security Department, ... and the administration of all other housing matters is the responsibility of the ... Housing Department." *Id.* On or about September 29, 1989, Chester broke his tether. A neighbor, Mrs. Daly, saw Chester running loose and took him into custody. After tying Chester to a bicycle, Mrs. Daly called the Security and Housing authorities. While Mrs. Daly was placing her call, Chester bit eight-year old Jillian Brotko on the cheek when she suddenly came into the area where Chester was then fettered. Jillian's parents notified the Naval Education and Training Center (NETC) Police and, thereafter, brought Jillian to Newport Hospital. Jillian received stitches for her wounds.

Plaintiffs' complaint alleges that the dog bite caused a permanent deformity and emotional trauma to the child.

Plaintiffs filed an administrative claim against the Navy, pursuant to 28 U.S.C. § 2671, on April 29, 1988. After the Navy failed to respond within six months, the Brotkos filed suit in this Court. Basing their complaint on the FTCA, plaintiffs assert three theories for government liability. First, plaintiffs claim that the government is liable for the dog bite injuries under the doctrine of *respondeat superior* as the employer of Brian Martinez, Chester's owner. Second, they make the claim that the government is liable under the same doctrine as the employer of the Security and Housing personnel. Third, they claim the government is liable as a harborer or keeper of Chester under R.I.Gen.Laws § 4-13-17.

The government argues that under Rhode Island law it cannot be held liable because Martinez, by keeping the dog, was not acting in furtherance of the government's business. The government also denies liability under the doctrine of *respondeat superior* for the alleged failure of the Security and Housing personnel to control the dog. It asserts that the duty to control pets is only imposed on the pet owner. In the alternative, the government argues that the NETC lacked prior knowledge of Chester's vicious nature and, thus, was not at fault in any event. Finally, the government maintains that its relationship with Martinez and Chester did not place the government in the category of a harborer or keeper of the animal. In addition, the government points out that to hold the government liable under R.I.Gen.Laws § 4-13-17 would impose absolute liability on the government and would, thus, be barred by the FTCA. After oral arguments, the Court took this matter under advisement. It is now in order for decision.

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, provides that the United States shall be liable in tort for the wrongful acts of its employees when the employees' acts fall within the scope of their office or employment. The government may be held liable "in the same manner and to the same extent as a private individual under like circumstances." *Id.* Congress defined "acting within the scope of his or her office or employment" for military personnel as "acting in line of duty." 28 U.S.C. § 2671. The First Circuit, noting that courts must apply the "law of the place where the act or omission occurred," 28 U.S.C. § 1346(b), stated that "[i]t is settled that the phrase 'acting in line of duty,' while having a military sound, ... with respect to the Tort Claims Act, merely invokes the state law of respondeat superior." *Merritt v. United States,* 332 F.2d 397, 398 (1st Cir.1964); *see also Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam).

Other federal courts, however, have split on the issue of whether or not the distinctive characteristics of military employment should be considered when fixing the parameters of the government's liability as an employer. The Circuit Courts which have held that the "in line of duty" language contemplates the special military characteristics have found the government liable for injuries due to dog bites, *Lutz v. United States,* 685 F.2d 1178, 1183 (9th Cir.1982), lawnmowers, *Craft v. United States,* 542 F.2d 1250, 1255 (5th Cir.1976), *reh'g denied en banc,* 546 F.2d 906 (1977), and automobiles, *Hinson v. United States,* 257 F.2d 178, 181 (5th Cir.1958). Other federal courts have noted the FTCA's narrow purpose and analyzed liability by strictly treating the United States government as a private employer. *See McSwain v. United States,* 422 F.2d 1086, 1088 (3rd Cir.1970); *Government Employee Ins. Co. v. United States,* 349 F.2d 83, 85 (10th Cir.1965), *cert. denied,* 382 U.S. 1026, 86 S.Ct. 646, 15 L.Ed.2d 539 *reh'g denied,* 383 U.S. 939, 86 S.Ct. 1064, 15 L.Ed.2d 857 (1966); *Kimball v. United States,* 262 F.Supp. 509, 512 (D.N.J.1967) ("line of duty" language should not extend government liability beyond traditional concepts). These courts recognize that to extend the liability of the government irrespective of when and under what circumstances the servicemen acted,

would be tantamount to imposing liability on the Government every time a serviceman committed a negligent act which resulted in an injury. This would, of course, greatly expand the Government's liability under the Federal Tort Claims Act in spite of the long-established proposition that the Act was designed to impose liability only under circumstances where a private person would be liable. *Wilson v. United States*, 315 F.Supp. 1197, 1199–2000 (E.D.Pa.1970); *see Pruden v. United States*, 399 F.Supp. 22, 27 (E.D.N.C.1974), *aff'd*, 511 F.2d 1398 (4th Cir.1975).

The First Circuit appears to have adopted the narrow view of the FTCA since it ignored the military background of the claim and focused on Massachusetts law in *Merritt, supra*, 332 F.2d at 398–99. Finding nothing in Massachusetts precedent ordaining that an ordinary employee smoking in bed after hours would be acting within the course of his or her employment, the court upheld the district court's dismissal of the action. *Id.* The fact that the serviceman resided in property leased to him by the government did not alter the court's finding. *Id.*

A. Liability as employer of dog owner

■ To hold a private employer liable for the wrongful or negligent acts of an employee under Rhode Island *respondeat superior* law requires proof that the employee was acting in furtherance of his or her employer's business at the time that the harm occurred. *Haining v. Turner Centre Sys.*, 50 R.I. 481, 484, 149 A. 376 (1930). Further, the employee must have acted within the express or implied authority of the employer. *See id.* An earlier case deciding the employer liability issue considered whether the employee's conduct at the time of the injury was necessary to the employer's business. *See Rice v. Harrington*, 38 R.I. 47, 49, 94 A. 736 (1915). Although the government may have given Martinez the implied or express authority to house Chester on Navy property, Chester's presence on the Navy base did not benefit the government. Martinez did not use Chester in furtherance of his work with the Navy. In fact, Martinez did not

reside in Navy housing to further his employer's business at all. Martinez's job performance did not necessitate compliance with the pet control regulation. As discussed *infra*, the pet regulation only incidentally, if at all, benefitted the government as an employer. Clearly, had Martinez lived elsewhere, the government could not have been held liable under Rhode Island law in this situation.

Since the Federal Tort Claims Act, 28 U.S.C. § 1346(b), precludes state court jurisdiction over claims against the United States, *McSwain, supra*, 422 F.2d at 1088, the Rhode Island cases do not present any directly analogous circumstances. *Cf. Kimball, supra*, 262 F.Supp. at 512. Other circuit courts, however, have addressed cases specifically on point.

Three federal courts have reviewed the issue of government liability for injuries caused by military personnels' dogs. *Piper v. United States*, 887 F.2d 861 (8th Cir.1989); *Nelson v. United States*, 838 F.2d 1280 (D.C.Cir.1988); *Lutz v. United States*, 685 F.2d 1178 (9th Cir.1982). The facts in these cases mirror each other. Each involved harm to a young child-resident of an Air Force base. The plaintiff in each case, alleged that a dog, owned by a resident military person, caused the harm to the child by biting the child while the dog was outside the confines of the owner's home. Each Air Force base allowed pets within military housing but imposed regulations which required the dog owners to control their pets. Despite the factual similarities, different results ensued.

The contrary findings by the courts resulted from the different emphasis placed by the courts on the distinctive characteristics of military employment. The separate states' laws of *respondeat superior* each approximated an "in furtherance of employer's business" standard. Yet, while the Ninth Circuit in *Lutz*, identified the pet control regulation as a "mandatory, affirmative duty.... directly or indirectly associated with normal and regular [military] ... activities," 685 F.2d at 1183, the District of Columbia Circuit Court characterized the

same type of pet regulation as a housekeeping obligation "designed to ... enhance community life." *Nelson, supra,* 838 F.2d at 1284. The *Lutz* court found the government liable as the serviceman's employer. 685 F.2d at 1183. The *Nelson* court, and later the *Piper* court, found the opposite. *Id.; see Piper, supra.*

A later Ninth Circuit case, *Hartzell v. United States,* 786 F.2d 964 (9th Cir.1986), attempted to uphold the *Lutz* precedent while reaching an opposite result. *See id.* at 969–70. Here, the Ninth Circuit held that the government was not liable for injuries caused by an automobile driven by a servicewoman. *Id.* at 966–7. Addressing the issue of the military's unique control over its personnel as a means of extending government liability, the court reaffirmed that "the proper means of analyzing torts involving military personnel is to strip the case of 'its military overtones'." *Id.* at 968 (quoting *McCall v. United States,* 338 F.2d 589, 593 (9th Cir.1964), *cert. denied,* 380 U.S. 974, 85 S.Ct. 1334, 14 L.Ed.2d 269 (1965)). The *Hartzell* court however, noted without criticism, the mandatory dicta in *Lutz* requiring consideration of the special military relationship. *Id.* at 970. The *Hartzell* court unsuccessfully distinguished its holding by finding that, unlike chaining a dog outside of military housing, driving a car en route to a new duty station did not involve "regular and specific military activity." *Id.*

Two circuit court decisions involving dog bites in military housing have criticized *Lutz* and produced holdings contrary to *Lutz. See Piper, supra; Nelson, supra,* 838 F.2d at 1283–4. These courts noted that the *Lutz* analysis results in the characterization of any trivial or personal military regulation as being within the employment relationship. *Id.* The *Nelson* court reasoned that "[t]o hold the government potentially liable for all damage done by conduct on a military base that violates any one of the many base regulations would expand liability in ways inconsistent with the idea that the FTCA must be strictly interpreted as a limited relinquishment of sovereign immunity." *Nelson, supra,* 838 F.2d at 1284. Comparing military housing

to the old company towns and recognizing that community living requires guidelines and rules to assure orderliness and happiness, these courts emphasized the housekeeping nature of the pet control regulations. Both courts refused to hold the government derivatively liable for a military person's failure to comply with the pet regulations. *Piper, supra; Nelson, supra,* 838 F.2d at 1284.

This Court follows the more persuasive analysis set forth in *Piper* and *Nelson. Lutz* stretches government liability beyond the sphere intended by the FTCA. The pet control regulation benefitted the military *housing* community. Although it may have benefitted the government as a landlord, any benefit which inured to the government was merely incidental to the government's role as employer. Following the federal precedents directly on point, as well as Rhode Island *respondeat superior* law, this Court grants defendant's motion for summary judgment on plaintiffs' claim that the government is derivatively liable for Martinez's conduct regarding Chester because it is Martinez's employer.

**B. Government Liability as employer of Security and Housing personnel.**

This court can easily dispose of the scope of employment issue with regard to the Security and Housing personnel. The Navy employs these people in roles akin to the managing agents at apartment complexes and imposes regulations to assure comfortable and safe housing for military servicemen and their families. Dogs and dog bites potentially involve housing and safety issues. Housing disputes and safety issues without doubt fall within the Security and Housing departments' sphere of control. Whether the government can be held liable under the FTCA for that personnels' failure to control Chester depends again on whether Rhode Island law would permit recovery against a private employer under these circumstances.

Plaintiffs touch upon two issues of liability which this Court will now address. The first issue is whether the government, through its Security and Housing employ-

ees, can be considered a harborer or keeper of Chester under R.I.Gen.Laws § 4–13–17. The second issue is whether the government as a landowner and landlord can be said to have breached its duty to its tenant, the Brotkos, to keep the premises reasonably safe.

R.I.Gen.Laws § 4–13–17 imposes dog bite liability on any harborer or keeper of a dog. Specifically, the statute provides: "Every person keeping or harboring in his house or on his lands any dog, or knowingly suffering the same to be done by any other person, shall be liable for all damages done by the dog in the same manner as if he were the owner thereof." *Id.* Plaintiffs argue that because the Security and Housing personnel, as managing agents of military housing, maintained possession and control of the property and because they knew of Chester's presence, the government should be liable as a harborer or keeper, or more precisely as the owner of the dog. *See Lindsay v. Crohan,* 508 A.2d 674, 676 (R.I.1986); *Oldham v. Hussey,* 27 R.I. 366, 368, 62 A. 377 (1905). Contrary to the D.C. Circuit's decision in *Nelson v. United States, supra,* plaintiffs contend that this knowledge and control amounts to legal ownership, and that ownership, in and of itself, imposes liability.

▮ Plaintiffs' arguments on this point rest on a theory of absolute liability by the government, since Section 4–13–16 provides for an owner's or keeper's liability absent proof of negligence or fault. *Palmer v. Saccocia,* 33 R.I. 476, 478, 82 A. 265 (1912). Plaintiffs' argue that the NETC's prior knowledge of Chester's viciousness is not necessary to establish liability, but this in itself causes their contention to fail. Rhode Island dog bite law provides for strict liability, i.e., liability absent proof of scienter, negligence, or fault. Since the FTCA precludes strict liability actions against the United States government, *Laird v. Nelms,* 406 U.S. 797, 798–9, 92 S.Ct. 1899, 1900–01, 32 L.Ed.2d 499 *reh'g denied,* 409 U.S. 902, 93 S.Ct. 95, 34 L.Ed.2d 165 (1972); *Dalehite v. United States,* 346 U.S. 15, 44–45, 73 S.Ct. 956, 972–73, 97 L.Ed. 1427 *reh'g denied,* 346

U.S. 841, 74 S.Ct. 13, 98 L.Ed. 362 (1953), this Court must grant defendant's motion for summary judgment on the issue of Section 4–13–17 liability. *See Perez v. United States,* 594 F.2d 280, 283 (1st Cir. 1979).

Plaintiffs' final theory focuses on the government's negligent failure, as a landowner and landlord, to provide safe housing. In *Lindsay v. Crohan, supra,* the Supreme Court of Rhode Island held that a landlord not in possession of the property was not liable for harm to a tenant caused by another tenant's dog when the landlord did not know that the dog was present on the land. *Lindsay, supra,* 508 A.2d at 676 (considering harborer and keeper statute). The *Lindsay* court left open the question of whether knowledge of the dog's presence alone would be sufficient to impose liability on the landlord. *Id.* If the court imposed liability on a landlord who knew only of a dog's presence and nothing of the dog's vicious propensities or past harm, it would, in effect, be imposing absolute liability. Again, the FTCA would bar such a claim.

Plaintiffs, however, appear to rely on a negligence theory in this case. Although the point is undecided in Rhode Island, other jurisdictions have held that a landlord owes a duty of due care to protect others from a vicious animal when the landlord has knowledge of a dangerous animal's presence on the premises and when the landlord has some ability to control or remove the animal. *See Palermo v. Nails,* 334 Pa.Super. 544, 483 A.2d 871, 873 (1984); *Uccello v. Laudenslayer,* 44 Cal.App.3d 504, 118 Cal.Rptr. 741 (1975). In *The Alaskan Village, Inc. v. Smalley,* 720 P.2d 945 (Alaska 1986), the Alaska Supreme Court decided that the owner of a mobile home park was liable when a tenant owned dog bit a young girl. The court noted that although a lease prohibited the presence of vicious dogs and allowed for cancellation of the lease in such cases, the park owner granted the tenants involved a permit to keep two chihuahuas. *Id.* The court imposed liability under Restatement (Second) of Torts § 323 which provides that a general duty to protect arises when one under-

takes to render services to another. *Id.* Knowledge of the canine's presence on the land as well as the ability to eradicate the potential danger, whether by eviction of the tenant or the dog, present the keystones to landlord dog bite liability. *See Wright v. Schum,* 781 P.2d 1142 (Nev. 1989). (Landlord undertook duty to protect the world from dog when he allowed tenants to remain on property after they promised to keep the dog in the house or chained in the yard); *see also Alaskan Village, supra,* 720 P.2d 945 (landlord had duty to enforce pet control provisions in lease); *Palermo v. Nails,* 334 Pa.Super. 544, 483 A.2d at 873 (duty to protect arose from knowledge of animal and right to evict tenant at sufferance).

Other jurisdictions have applied general tort law principles and found that landlords must act as reasonable persons under all the circumstances. Under this analysis, the question of whether a landlord has a duty to protect others requires consideration of the "likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing the risk." *Sargent v. Ross,* 308 A.2d 528, 534 (N.H.1973); *see also Wright, supra,* 781 P.2d 1142; Prosser and Keeton, *Law of Torts* § 63 (5th ed.1984). Again, knowledge of the vicious nature of an animal along with a landlord's authority to prevent harm through eviction place a duty on a landlord to protect others from harm. *See Wright, supra,* 781 P.2d 1142.

Absent authority which supports plaintiffs' contention, this Court cannot accept the view that the Supreme Court of Rhode Island would decide that knowledge of a dog's vicious propensities alone would place a duty on a landlord to protect tenants. Under Rhode Island law, a landlord may be held liable for harm caused by unsafe conditions, if the injured party proves that the landlord knew or should have known of the danger, i.e., that the danger was foreseeable, *See Robitaille v. Brousseau,* 115 R.I. 27, 29–30, 339 A.2d 738, 740 (1975); *Saritelli v. Industrial Trust Co.,* 84 R.I. 42, 48, 121 A.2d 329, 333 (1956), and that the landlord maintained some level of control over the leased prem-

ises. *Gormley v. Vartian,* 121 R.I. 770, 780, 403 A.2d 256, 261–62 (1979); *Robitaille, supra,* 115 R.I. at 29–30, 339 A.2d at 740; *Monti v. Leand,* 108 R.I. 718, 720–21, 279 A.2d 743, 744–45 (1971) (convenant to repair not necessarily reservation of control sufficient to extend liability to landlord). Based on the above Rhode Island cases, it is reasonable to conclude that the Rhode Island Supreme Court, in order to impose liability on a landlord when a tenant-owned dog bites another tenant, would require the landowner to have control over the premises as well as knowledge of the potential harm. In short, this Court believes that the Rhode Island Supreme Court would agree with the California Court of Appeals' statement that "if a landlord has such a degree of control over the premises that it fairly may be concluded that he can obviate the presence of the dangerous animal and that he has knowledge thereof, an enlightened public policy requires the imposition of a duty of ordinary care." *Uccello, supra,* 44 Cal.App.3d 504, 118 Cal.Rptr. 741.

■ The government's argument that, as a matter of law, it had no duty to protect a tenant from potential harm from an animal owned by another tenant is without merit. The Navy regulations impose a duty on the Security and Housing departments to enforce the pet control regulations. The Regulations authorize eviction of the tenant or of the dog when a tenant's dog (1) bites another unprovoked, or (2) when the dog becomes an actual or potential menace, or (3) when a Security Officer receives three complaints regarding the animal, or (4) when the animal causes damage to property. NETCNPT/LOCAL AREA R.I. COORDINST 11101.5A. Therefore, if it comes to the attention of the Security and Housing personnel that a dog with vicious tendencies is being maintained on the premises by a tenant, it becomes the duty of that personnel to evict the dog, or the tenant along with the dog, for the protection of the other inhabitants within that Navy housing. In short, the regulations give the Housing and Security personnel sufficient control over the premises to

require the exercise of due care when they acquire knowledge that the dog has become an actual or potential menace to other tenants.

■ The question then becomes whether the government in this case had prior knowledge of Chester's viciousness before Jillian was bitten so as to trigger this duty of due care. The affidavits and depositions presented indicate that a dispute exists over whether the NETC received complaints prior to the incident in question regarding Chester's escapades. Defendant points to the deposition testimony of a trash collector, Mr. Wilding, who stated that although he eventually complained of Chester's viciousness to the NETC, he made his complaints after the September 29th incident with Jillian. (Depo. p. 12). Defendant has also filed affidavits from Security and Housing personnel which indicate that no records of any complaints about Chester exist. Further review of the deposition, however, indicates that Mr. Wilding may have complained before Jillian's injury. The deposition reads:

Q: So now before the dog bite incident, before that happened, had you ever had any occasion to make any type of complaint to Mr. Munson or to anybody on the Navy Base about the dog?

A: A couple of times. I think to the housing manager. (Depo p. 15)

The deposition further states:

Q: Do you recall the first time that you had occasion to talk to Mr. Murphy about the Martinez dog?

A: No, I don't recall what date or day it was.

Q: Do you recall approximately how long before this incident on September 29, 1987?

A: Oh, it was probably a week or two before the incident happened. (Depo p. 17)

To grant a motion for summary judgment, a district court must satisfy itself that no genuine issue of material fact exists. *Foster Med. Corp. Employees' Pension Plan v. Healthco, Inc.*, 753 F.2d 194, 197 (1st Cir.1985). Generally, a negligence claim is not fodder for the summary judgment mill. When there is a material question of fact to be resolved, a litigant has a right to a trial. *Peckham v. Ronrico*, 171 F.2d 653, 657 (1st Cir.1948); *see also* 6 *Moore's Federal Practice* ¶ 56.15[1.–01] (2d ed.1988). Even with affidavits denying knowledge from each person in charge of housing and security records, Mr. Wilding's contradictory testimony to date raises a question which a trier of fact must decide. *See General Office Products Corp. v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077, 1078 (1st Cir.1986).

This matter must proceed to trial on the issue of the government's liability as a landlord. In order to recover, plaintiffs will have to prove by a fair preponderance of the evidence that the Security and Housing people (1) knew, or by the exercise of reasonable care should have known, of Chester's vicious propensities before Jillian was bitten and (2) that it was unreasonable for said government personnel to do nothing about Chester in the light of all the circumstances.

## CONCLUSION

This Court grants defendant's motion for summary judgment as to plaintiffs' claim that the government is liable for the dog bite as Brian Martinez's employer and as to plaintiffs' claim that the government is absolutely liable under the Rhode Island harborer and keeper statute. The Court denies defendant's motion for summary judgment on plaintiffs' claim that the government is liable for the negligence of the Security and Housing personnel. It follows from this discussion, that plaintiffs' motion for partial summary judgment on the liability issue must also be denied.

*It is so Ordered.*