Ronald William PHILLIPS and Wendy S. Phillips, Individually and as Next Friends of Christian Phillips, a minor, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. EP–05–CA–224–PRM.

United States District Court, W.D. Texas, El Paso Division.

July 18, 2006.

James Allen Martinez, Assistant City Attorney, El Paso, TX, John N. Mastin, Law Offices Of John N. Mastin, San Antonio, TX, for Plaintiffs.

Eduardo R. Castillo, Assistant United States Attorney, El Paso, TX, for Defendant.

### ORDER GRANTING DEFENDANT'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

MARTINEZ, District Judge.

On this day, the Court considered Defendant United States of America's ("Defendant" or the "Government") "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" ("Motion"), filed on May 26, 2006, Plaintiffs Ronald William Phillips and Wendy S. Phillips's, individually and as next friends of Christian Phillips, (collectively "Plaintiffs") "Brief and Response to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" ("Response"), filed on June 16, 2006, and Defendant's "Reply to Plaintiffs' Response" ("Reply"), filed on June 26, 2006 in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Alternative Motion for Summary Judgment should be granted for the reasons set forth below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2004, Christian Phillips was bitten by Army Specialist Nathaniel Tutor's ("SPC Tutor") pit bull dog ("King"). Def.'s Mot. 1; Pls.' Resp. 1. At the time of the incident, Plaintiffs and SPC Tutor resided on post housing provided by the United States Army at Fort Bliss, El Paso, Texas. Pls.' Resp. 2. On the date in question, Fort Bliss imposed on resident pet owners regulations governing the control and maintenance of pets on post housing. Pls.' Resp. 2. Specifically, Fort Bliss maintained United States Army Air Defense Artillery Center and Fort Bliss ("USAADACENFB") Regulation 190–4 ("Regulation 190–4") and Regulation 210–50 ("Regulation 210–50"). Def.'s Mot., Appendix A, Ex. 1 (Regulation 190–4), Ex. 2 (Regulation 210–50).

On June 9, 2005, Plaintiffs filed the instant lawsuit against the Government pursuant to the Federal Tort Claims Act ("FTCA"). Pls.' Original Compl. ¶ 3. SPC Tutor is not a party to this lawsuit. Rather, Plaintiffs are proceeding solely against the Government on two separate legal theories.[1] First, Plaintiffs seek to hold the

---

1. Plaintiffs have conceded that they cannot

recover for their claims against the Govern-

Government liable under a theory of respondeat superior for the negligent acts or omissions of SPC Tutor. Pls.' Resp. 2. Second, Plaintiffs allege that the Government is liable under a theory of premises liability for its failure to create, implement, oversee, supervise, or enforce "adequate policies and procedures that would effectively protect those class of persons entitled to be protected." Pls.' Resp. 2.

The Government counters that the discretionary function exception to the FTCA precludes Plaintiffs from holding the Government liable for its adoption or enforcement of policies regulating animals. Def.'s Mot. 2. Furthermore, the Government asserts that it may not be held liable for any negligent act or omission of SPC Tutor because he was not acting in the line of duty. *Id.* Lastly, the Government contends that SPC Tutor was not negligent. *Id.*

## II. LEGAL STANDARD

Because the Court will consider supporting documentation attached to the Government's Motion as well as Plaintiffs' responsive pleading, the Court will treat the instant motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Stewart v. Murphy,* 174 F.3d 530, 532–33 (5th Cir. 1999) (citing FED. R. CIV. P. 12(b)).

Federal Rule of Civil Procedure 56(c) mandates summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although the movant must " 'demonstrate the absence of a genuine issue of material fact,' [it] need not *negate* the elements of the non-movant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *Id.*

If the movant satisfies his initial burden, the non-movant must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing FED. R. CIV. P. 56(e)). In other words, "the non-movant must adduce evidence which creates a material fact issue concerning each of the essential elements of its case for which it will bear the burden of proof at trial." *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir.1993). A court must resolve factual controversies or disputes in the non-movant's favor, but "only when there is an *actual* controversy, that is, when both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075 (emphasis added). A court should not, "in the absence of any proof,

ment in their individual capacities under the theory of "bystander recovery." Def.'s Mot. 14; Pls.' Resp. 10. Plaintiffs also recognize that the FTCA does not permit claims of strict liability against the Government. Pls.' Resp. 2. Accordingly, the Court need not address these claims.

assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rather, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file," identify those facts establishing a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotations and citations omitted). Likewise, "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis omitted). The non-movant "is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## III. DISCUSSION

### A. Civil Actions Under the Federal Tort Claims Act

"Absent a waiver, sovereign immunity shields the Federal Government ... from suit." *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). The FTCA, comprising in pertinent part 28 U.S.C. §§ 1346, 2401, and 2671 through 2680, "was designed primarily to remove the sovereign immunity of the United States from suits in tort and ... to render the Government liable in tort as an individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6,

82 S.Ct. 585, 7 L.Ed.2d 492 (1962); 28 U.S.C. § 2674. Through the FTCA, "the [G]overnment has generally waived its sovereign immunity from tort liability for the negligent or wrongful acts or omission of its agents who act within the scope of their employment." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994).

Pursuant to Title 28 U.S.C. § 1346(b), the United States is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (2005).

### B. Discretionary Function Exception

In Plaintiffs' Complaint, they allege that the Court should hold the Government directly liable for Christian Phillips's injuries because the Government undertook to set forth rules and regulations for the protection of individuals such as Christian Phillips. Pls.' Compl. ¶ 9. Plaintiffs further allege that the Government's regulations pertaining to pet maintenance were "inadequate as established...." *Id.* The Government contends that, pursuant to the discretionary function exception, it has not waived sovereign immunity from suit for its adoption and enforcement of regulations such as the animal policy at Fort Bliss. Plaintiffs wholly fail to address the Government's discretionary function exception argument in their Response.

The FTCA contains limitations and exceptions to the Government's waiver of sovereign immunity. The FTCA limitation relevant to the instant case is the "discretionary function" exception ("DFE"), which provides that the Govern-

ment retains immunity from suit for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). A court conducts a two step inquiry to determine whether the DFE insulates government conduct from liability under the FTCA. *See United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (providing two inquiries for courts analyzing the applicability of the DFE). First, a court must determine whether the challenged action or decision is considered discretionary. *Id.* An act will qualify as discretionary if it "involv[es] an element of judgment or choice" by the acting government employee. *Id.* (internal quotation omitted). Accordingly, the DFE is inapplicable where a federal statute, policy, or regulation mandates a particular course of action, and an employee has no choice but to comply. *Id.* Assuming the employee conduct qualifies as discretionary, a court must next determine whether the exercised discretion is the type that Congress intended to protect with the DFE. *Id.* The purpose of the DFE is to "prevent judicial second guessing" of government decisions that are "grounded in social, economic, or political policy." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In essence, the DFE retains the government's general immunity from liability where the government's conduct is "based on considerations of public policy." *Berkovitz v. United States,* 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

The Court's first inquiry is whether or not officials at Fort Bliss had discretion, as defined by the DFE, in formulating and implementing Regulations 190–4 and 210–50. The uncontested evidence demonstrates that the Army does not have a mandatory policy concerning the maintenance and control of pets on base housing. *See* Def.'s Mot., Ex. 6, Decl. of Stephen James Edmonds ("Edmonds") 2 ("The Army does not have a standard policy on the maintenance of pets on military installations."); *see also* Pls.' Resp., Ex. H, Dep. of Stephen R. Deeb, DVM ("Deeb") 61:3–17 (stating that there is not a "blanket universal regulation" issued by the military governing pet maintenance or requiring that any particular breed be banned). Rather, each Post Commander retains the authority to develop regulations specific to the needs of each military installation. Def.'s Mot., Ex. 6, Decl. of Edmonds 2; *see* Pls.' Resp., Ex. H, Dep. of Deeb 41:19–42:2 ("It's left to the individual commander of the installation to establish [pet maintenance regulations]. There is a Fort Bliss-specific regulation."). Because the Post Commander at Fort Bliss had the authority to exercise personal choice and judgment in the creation and implementation of pet regulations at that military installation, the Court concludes that the adoption and implementation of Regulations 190–4 and 210–50 were discretionary actions as contemplated by the DFE.

The Court must next determine whether the DFE was intended to protect the creation and implementation of Regulations 190–4 and 250–10 at Fort Bliss. Regulation 190–4 states that it "sets guidance to maintain a healthy environment for the USAADACENFB community." Def.'s Mot., Ex. 1 at 1 (Regulation 190–4). Furthermore, in the Declaration of Stephen James Edmonds, Deputy Provost Marshal for Fort Bliss,[2] he states that a Post Com-

---

2. "The Deputy Provost Marshal is the second in command for the Provost Marshal's Office

mander would balance social, safety, economic, and enforcement issues when developing a base pet policy. Def.'s Mot., Ex. 6, Decl. of Edmonds 2. These considerations are grounded in social and economic policy, both of which are the types of considerations protected by the DFE. Accordingly, the Court finds that the selection and implementation of Regulations 190–4 and 250–10 involved the type of discretionary conduct that the DFE was meant to protect.

In summary, Defendant has met its burden of producing evidence demonstrating that the Government's adoption and implementation of Regulation 190–4 and 250–10 fall within the coverage of the DFE. As Plaintiffs have elected not to address Defendant's DFE argument altogether, Plaintiffs have clearly failed to demonstrate any "specific facts showing that there is a genuine issue for trial" regarding their challenge to Defendant's regulations. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Accordingly, the Court concludes that summary judgment is proper in favor of the Government and against Plaintiffs on Plaintiffs' claims challenging the adequacy of the Government's pet regulations.

## C. Premises Liability

Plaintiffs claim that the Government should be held liable in its capacity as SPC Tutor's landlord because it "knew prior to [King] being allowed on base that this breed had a vicious or dangerous propensity to injure or harm others." Pls.' Resp. 6. Defendant claims that there is no evidence that it had actual knowledge of King's dangerous or vicious propensities. Def.'s Reply 5. Furthermore, Defendant alleges that "generalized assumptions re-

garding particular breeds are insufficient to establish actual knowledge as to a specific dog's propensities." *Id.*

The FTCA provides that the Government may be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Furthermore, courts apply the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In Texas, a landlord "owes a duty of ordinary care to third parties" injured by a tenant's animal "if a landlord has actual knowledge of an animal's dangerous propensities and presence on the leased property, and has the ability to control the premises." *Batra v. Clark*, 110 S.W.3d 126, 130 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Accordingly, the Court must determine whether a genuine issue of material fact exists concerning whether the Government knew that King was present on the leased property, whether it knew that King had dangerous or vicious propensities, and whether the Government had the ability to control the premises.

 The evidence is uncontroverted that the Government knew that King was on base. *See* Pls.' Resp. 6, Ex. G, King's Base Veterinary Records. King was registered with Fort Bliss as required by Regulations 190–4 and 250–10. Def.'s Mot., Ex. 7, Decl. of Deeb (stating that SPC Tutor "brought King into the [Ft. Bliss veterinary] clinic as a puppy to register him and get all the necessary vaccinations"); Def.'s Mot., Ex. 1, Regulation 190–4 at 9; Def.'s Mot., Ex. 2, Regulation 250–10 at E–1. The existence of Regulations 190–4 and 210–50 indicates that the Government had the ability to control post

(PMO). The PMO is the law enforcement entity on Ft. Bliss. The primary mission of the PMO is the enforcement of rules, regula-

tions, federal law, and some state and local laws on Ft. Bliss." Def.'s Mot, Ex. 6, Decl. of Edmonds 1.

housing. However, there is no viable summary judgment evidence that the Government had actual knowledge that King had any dangerous tendencies. Rather, Plaintiffs offer the following evidence to demonstrate that the Government had actual knowledge that SPC Tutor's pit bull was dangerous: (1) the deposition testimony of army officials indicating awareness of the Government that the pit bull breed had the potential to be more aggressive or injurious;[3] and (2) Wendy Phillips's controverted deposition testimony that Leticia Tutor told Mrs. Phillips that she had asked her husband "to get rid of that damned dog when he bit Mark."[4] Pls.' Resp. 8, Ex. I, Dep. of Wendy Phillips 22:11–13. Even accepting all of Plaintiffs' admissible evidence as true, it fails to create a fact issue with respect to the Government's actual knowledge that King was a danger.

Plaintiffs ask the Court to infer from the Government's generalized knowledge about pit bulls as a breed that the Government had actual knowledge that King, specifically, was a dangerous dog. This is an impermissible inference for the Court to make, which Plaintiffs fail to support with any legal authority. Rather, Plaintiffs rely on the deposition testimony of Deputy Provost Marshal Stephen James Edmonds that there are breeds, including pit bulls, which have "tendencies towards aggression." Pls.' Resp. 5, Ex. D, Dep. of Edmonds 24:4–13. Additionally, Plaintiffs direct the Court to Major Stephen R. Deeb, DVM's deposition testimony that pit bulls were one of the breeds that "had physical characteristics or breed characteristics that gave [it] a higher incidence of being able to cause harm." Pls.' Resp. 5, Ex. D, Dep. of Deeb 24:17–23. Nothing in the deposition testimony of either Deeb or Edmonds indicates that the Government had, or through the exercise of reasonable care should have had, actual knowledge that *King* had any dangerous or vicious propensities. Rather, Deeb specifically stated that "there was no way to know whether *this* dog was ever going to do that or not. . . ." Pls.' Resp., Ex. D, Dep. of Deeb 48:24–49:1.[5] Prior to this incident, there was never a report or complaint filed with Fort Bliss indicating that King was a vicious dog. On the contrary, all of the evidence shows that individuals who had

**3.** One piece of evidence offered by Plaintiffs to demonstrate the Government's knowledge of pit bull dogs' dangerous propensity is the policy implemented by the Government four months *after* the incident in question banning the possession of pit bull dogs on post housing. Plaintiffs have offered this subsequent policy in an attempt to demonstrate the Government's negligence at the time of Christian Phillips's injury. However, this is improper summary judgment evidence, which the Court will not factor into its consideration, as Federal Rule of Evidence 407 precludes evidence of subsequent remedial measures to prove negligence.

**4.** Defendant objects that this statement is improper summary judgment evidence as it is hearsay, pursuant to Federal Rule of Evidence 802. Hearsay evidence does not constitute competent summary judgment evidence. *Martin v. John W. Stone Oil Distrib.,* *Inc.,* 819 F.2d 547, 549 (5th Cir.1987). Accordingly, the Court will not consider Mrs. Phillips's statement. However, the Court notes that even if it had considered *and accepted* Mrs. Phillips's deposition testimony as true, this would not establish the Government's awareness of King's dangerous propensities, as there is no evidence that the Government knew about the alleged previous bite.

**5.** Furthermore, the Court notes that neither Deeb nor Edmonds testified in their depositions to having knowledge that pit bulls *are* an inherently dangerous breed. In fact, Deeb testified that the issue of whether pit bulls are an inherently dangerous breed is a "controversial issue," which "has been a hot topic for a few years now, and continues to be. It's not a settled discussion, by any means." Pls.' Resp., Ex. D, Dep. of Deeb 37:14–18.

contact with King prior to this incident indicated that he displayed a "submissive, friendly, and well socialized" demeanor. Def's Mot, Ex. 9, Decl. of Kurt Edwin Lohmann; *see* Def.'s Mot., Ex.3, Sworn Statement of Ronald William Phillips 13 (stating that other than "occasionally barking," the dog had never been aggressive toward anyone before); Def.'s Mot., Ex. 4, Dep. of Jessica S. Marasse 12:1–2 ("[King] was very friendly. He would accept the petting and everything."). Accordingly, the Court concludes that Plaintiffs have failed to create a material issue of fact for trial concerning whether the Government had actual awareness of King's dangerous propensities. Therefore, summary judgment is appropriate in favor of the Government and against Plaintiffs on Plaintiffs' premises liability claim.

### D. Respondeat Superior

■ Plaintiffs claim that the Government is liable for the negligent acts or omissions of its employee, SPC Tutor. The Government will only be liable for the negligent or wrongful act of an employee who is "acting within the scope of his office or employment." 28 U.S.C. § 1346(b). For a member of the United States military, "acting within the scope of his employment or office" is further defined to mean "acting in line of duty." 28 U.S.C. § 2671. Courts define the phrase in the "line of duty" according to state respondeat-superior laws. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam).

In Texas, "an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002).

Accordingly, an initial inquiry for the Court is whether SPC Tutor's maintenance of King occurred within the scope of his employment, thereby potentially subjecting the Government to liability.

In addition to Texas law, the Court also considers the decisions of several federal circuit courts which have analyzed the government's derivative liability in substantially similar factual situations. Plaintiffs rely on the holding from *Lutz v. United States* for the proposition that a serviceman's control of a household pet falls within the scope of his employment. *Lutz v. United States*, 685 F.2d 1178, 1182 (9th Cir.1982). The district court found that the government was not liable under the FTCA because the ownership of a pet "was of no discernable benefit to the Air Force...." *Id.* The Ninth Circuit reversed, holding that military regulations governing the control and maintenance of household pets implicate issues of base security, which is a "regular military activity." *Id.* Because the control of household pets involved the regular military activity of base security, the Ninth Circuit held that it was within the scope of a soldier's employment. *Id.*

The *Lutz* Court based its decision in part on *Craft v. United States*, 542 F.2d 1250, 1254–55 (Former 5th Cir.1976). In *Craft*, the former Fifth Circuit held that a soldier who injured a child while mowing his lawn was acting within the scope of his employment. *Id.* The *Craft* Court relied on Alabama's respondeat superior law which states that "an employer is liable for a negligent act of an employee when the act was not only within the scope of his employment, but also committed in the accomplishment of objects within the line of his duties, or in or about the business of duties *assigned to him* by his employer." *Id.* (emphasis added). The Court held that the soldier's act of mowing his lawn was

within the scope of his employment because he was performing a particular duty which had been *assigned* to him for the benefit of the military; "[the] only choice was the immaterial one of which type of Government permitted mowing device he would use." *Id.* at 1255 (emphasis added).

Defendant notes that all other circuit and district courts confronting factually similar scenarios have rejected the reasoning of *Lutz. Chancellor v. United States,* 1 F.3d 438 (6th Cir.1993); *Piper v. United States,* 887 F.2d 861 (8th Cir.1989); *Nelson v. United States,* 838 F.2d 1280 (D.C.Cir.1988); *Stanley v. United States,* 894 F.Supp. 636 (W.D.N.Y.1995); *Brotko v. United States,* 727 F.Supp. 78 (D.R.I. 1989).

In *Nelson v. United States,* the District of Columbia Circuit rejected the holding of *Lutz,* reasoning instead:

> We doubt the adequacy of the *Lutz* rationale. Under *Lutz,* all duties imposed by military regulation, no matter how trivial, could fall within the serviceman's line of duty and thus within the employer-employee relationship. In the unique context of life on a military base, however, the government is much like an old-fashioned "company town." Within this multi-faceted relationship, the military imposes many duties on military personnel, not all of which are plausibly viewed as imposed by the government in its role as employer.
> ... Because such duties, although established by military regulations, do not run to the benefit of the employer and are linked only incidentally with the employment relationship, they cannot be said to be discharged within the scope of employment.

*Nelson v. United States,* 838 F.2d 1280, 1283–84 (D.C.Cir.1988). Both the Eighth Circuit, in *Piper v. United States,* and the Sixth Circuit, in *Chancellor v. United States,* declined to follow Lutz, opting instead to adopt the reasoning employed in Nelson. *Piper,* 887 F.2d at 864; *Chancellor,* 1 F.3d at 438.

Considering Texas respondeat superior law as well as the analysis of the relevant federal cases, the Court concludes that SPC Tutor's ownership and maintenance of his dog did not fall within the scope of his employment as an army specialist. Plaintiffs have failed to produce any evidence suggesting that SPC Tutor's maintenance of King furthered the Army's "business" or SPC Tutor's job as defined by Texas respondeat superior law. Rather, all evidence indicates that SPC Tutor's dog was nothing more than a personal pet. The government did not require him to own an animal in furtherance of any military related goals. *Contra Craft,* 542 F.2d at 1254–55. Furthermore, it appears that the Government issued its pet control regulations in its capacity as a landlord, not as an employer. Accordingly, like the *Piper* and *Chancellor* Courts, the Court finds the reasoning employed in *Nelson* to be persuasive and, therefore, the Court grants Defendant's Alternative Motion for Summary Judgment on Plaintiffs' derivative liability claim.[6]

## IV. CONCLUSION

Based on the foregoing analysis of facts and legal principles, the Court concludes that Defendant's Alternative Motion for Summary Judgment should be granted.

---

6. Because the Court has already concluded that the Government may not be held liable for SPC Tutor's negligent maintenance or control of King because SPC Tutor was not "acting within the scope of his office or employment," the Court need not decide whether SPC Tutor was actually negligent.

677

Accordingly, **IT IS ORDERED** that the United States of America's Alternative Motion for Summary Judgment (Docket No. 22) is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that all pending motions, if any, are DENIED AS MOOT. IT IS FINALLY ORDERED that the Clerk shall close this matter.