Linda M. NELSON, parent of Nelson, Tracey R., Appellee,

v.

UNITED STATES of America, Appellant.

No. 86-5447.

United States Court of Appeals, District of Columbia Circuit.

Argued April 3, 1987.

Decided Feb. 5, 1988.

Robert L. Willmore, Deputy Asst. Atty. Gen., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., Robert S. Greenspan and Marc Richman, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellant. R. Craig Lawrence and James N. Owens, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellant.

Norman L. Blumenfeld, Washington, D.C., for appellee.

Before MIKVA, BORK and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

This appeal requires us to determine whether the United States can be held liable in tort for injuries a civilian Air Force base resident sustained when she was attacked by a dog kept by a serviceman who also resided on the base. The district court concluded that the government was liable under two separate lines of analysis: (1) that the serviceman acted within the scope of his employment in keeping the dog; and (2) that the base security force was the "owner" of the dog and breached a duty to the plaintiff to remove the dog from the base. We think neither of these theories adequate to support liability.

Although we do not accept the district court's theories of liability, we think the record adequately sustains a third theory of liability. We hold that the government, through its employees, the base security, violated the duty of care owed to those who are invited on to its land. Because the government did not act reasonably in maintaining safe conditions in its residential areas, we affirm the judgment of the district court.

I.

The incident giving rise to this litigation occurred in April, 1983, at Bolling Air Force Base in the District of Columbia. Tracey Nelson, then nine years old, lived on the base in residential quarters assigned to her father by his employer, the United States Navy. Air Force Sergeant Clyde Casey, who at the time was stationed overseas, was also assigned residential quarters on the base. Casey's family lived in these quarters along with their dog Rocky, a 3–year-old, 5–foot-long, 65–pound German shepherd.

Tracey and a friend passed the Caseys' backyard on their way to a base playground adjacent to the Caseys' residence. Sergeant Casey's 18–year-old son, Robert,

**1282**

was in the backyard, as was Rocky. Robert was trimming the grass with a weedeater. Tracey stopped in front of the Caseys' 4 foot-high backyard fence to ask Robert about a ball her brother had lost. As Tracey was waiting to speak to Robert, Rocky came up to the opposite side of the fence without attracting her attention. The dog rose on its hind legs, lunged at Tracey, and bit her in the face. The bites inflicted severe injuries. Notwithstanding extensive reparative and cosmetic surgery, Tracey is permanently disfigured and has ongoing eye problems as a result of the incident.

Appellee Linda Nelson, Tracey's mother, brought this suit against the United States individually and on Tracey's behalf. Nelson argued that the government had derivative liability for its employees' negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671 (1982), on either of two theories. First, Mrs. Nelson claimed that Sergeant Casey had acted negligently within the scope of his employment in failing to exercise proper control over his pet as required by base regulations. Second, Mrs. Nelson charged that base security personnel were negligent for failing to remove Rocky from the base despite the fact that the dog had bitten or scratched children on at least two occasions during the two years prior to the Nelson incident.

After a two-day bench trial, the district court found for the plaintiff and entered a verdict of $342,000. *See Nelson v. United States*, 633 F.Supp. 1263 (D.D.C.1986). The court accepted both of the plaintiff's theories of liability. The court found that while Sergeant Casey's decision to own a pet was personal and not within the scope of his employment, Casey's control of the animal was governed by base regulations, which brought it into the scope of his duties as a military employee. Under this theory, Casey was acting within the scope of his employment in failing to prevent Tracey's injury, and therefore the United States was derivatively liable under the FTCA for Casey's negligence. In adopting this line of reasoning, the district court relied heavily on the decision of the Ninth

Circuit in a remarkably similar case, *Lutz v. United States*, 685 F.2d 1178 (9th Cir. 1982).

The district court also found that base security breached a duty of care owed to base residents by negligently permitting Sergeant Casey to keep the dog on the base. The court reasoned that because the base police knew about Rocky's violent propensities and had the authority to remove the animal from the base, they should be treated no differently from a pet owner who fails to control a dog he knows to be dangerous. Under this second theory, the government was also liable under the FTCA for its agents' negligence while acting in the scope of their employment.

## II.

### A.

The FTCA waives the government's sovereign immunity with respect to liability for money damages for injuries caused by negligent acts or omissions of government employees acting within the scope of their employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b) (1982). Each of appellees' theories of recovery, therefore, hinges on a showing that Tracey Nelson's injuries were caused by government employees acting within the scope of their employment. For military employees, Congress has defined acting within the scope of employment to mean "acting in [the] line of duty." 28 U.S.C. § 2671 (1982). "Line of duty," in turn, takes its meaning from the applicable state law of *respondeat superior*. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). The central question in this case thus becomes whether the government would be liable for the conduct of either Sergeant Casey or the base security under the District of Columbia's law of *respondeat superior*.

District of Columbia law permits an employer to be held liable for the acts or

omissions of its employees committed within the scope of their employment. *See Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C.1979). In attempting to fix the contours of the imprecise legal phrase "scope of employment," *see id.*, the District of Columbia Court of Appeals has focused on whether the employee was furthering his employer's interests. Thus, in *Reddick*, the court held that a railroad company could not be found liable for an assault committed by one of its employees, because the employee's action "was in no degree committed for [the employer's] benefit, to further its interest, or to serve its purposes." *Id.* at 32. More recently, in finding that an off-duty policeman was not acting in the scope of his employment when he assaulted a private citizen, the court found it "of particular importance that at no time was [the officer's] conduct in furtherance of the District's interests." *District of Columbia v. Coron*, 515 A.2d 435, 438 (D.C.1986). *See also Weinberg v. Johnson*, 518 A.2d 985, 990 (D.C.1986) (tort must be actuated, at least in part, by a purpose to further the employer's business); *Boykin v. District of Columbia*, 484 A.2d 560, 562 (D.C.1984) (District not liable for employee's assault of student because conduct "was in no degree committed to serve the school's interest").

### B.

■ The district court concluded that in negligently failing to control his dog, Sergeant Casey was acting within the scope of his employment under District of Columbia law. In this determination, the district court followed the Ninth Circuit's *Lutz* decision. 685 F.2d 1178 (9th Cir.1982). In *Lutz*, the mother of a young girl who resided on an Air Force base brought an FTCA action against the United States seeking damages for severe injuries sustained by her daughter when a dog owned by another base resident entered her backyard and bit her. The Ninth Circuit noted that a base regulation required the dog's owner to control the pet and to keep it on a leash while it was outside of the owner's quarters. Persons who failed to comply with this and other base regulations were subject to military discipline. The court reasoned that in issuing the regulation, the Air Force had imposed on the dog's owner "a mandatory, affirmative duty to protect the health and safety of all base residents by controlling the animal." 685 F.2d at 1183. The court concluded that given the unique context of military life, in which the employment relationship continues even during off-duty hours, the owner's responsibility to control the animal at all times fell within the scope of his employment. *See id.; see also Craft v. United States*, 542 F.2d 1250 (5th Cir. 1976) (government liable for child's injuries caused by base resident's negligent use of lawnmower while cutting grass outside of his apartment as required by army regulations). The *Lutz* court therefore determined that the United States was liable under the FTCA for the resident's negligent discharge of his duty.

The decision below adopted an identical line of reasoning. The court observed that Bolling Air Force Base regulations, enforced through the threat of military discipline, required base residents to control their pets kept on the base. Because the military mandated Sergeant Casey's restraint of his pet in this way, the court reasoned that Casey's responsibility to control Rocky was a duty that fell within the scope of his employment. Casey's failure to use reasonable care to control Rocky, the court concluded, was therefore properly imputed to the government under the FTCA. *Nelson v. United States*, 633 F.Supp. 1263 (D.D.C.1986).

We doubt the adequacy of the *Lutz* rationale. Under *Lutz*, all duties imposed by military regulation, no matter how trivial, could fall within the serviceman's line of duty and thus within the employer-employee relationship. In the unique context of life on a military base, however, the government is much like an old-fashioned "company town." Within this multi-faceted relationship, the military imposes many duties on military personnel, not all of which are plausibly viewed as imposed by the government in its role as employer.

Bolling Air Force Base regulations, for example, require base residents to use cer-

tain size pots and pans, to replace electrical fuses, and to refrain from smoking in bed. These duties are not imposed by the military in its role as an employer and they do not run to the employer's benefit. Rather, they are incidental regulations designed to ensure that the base functions under conditions of common consideration and orderliness that enhance community life; as such, they are designed to benefit all residents of the housing community. Because such duties, although established by military regulations, do not run to the benefit of the employer and are linked only incidentally with the employment relationship, they cannot be said to be discharged within the scope of employment.

Thus, we do not believe that it is possible to place every duty imposed by base regulation within the employer-employee relationship. Instead, whether a breach of military regulations subjects the government to tort liability must depend upon whether analogous duties exist under local tort law. *See Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1157 (D.D.Cir.1985) (duties embodied in federal regulations give rise to a claim under the FTCA only if there are analogous duties under local tort law).

There seems, moreover, to be no principled limit to the reasoning in *Lutz,* so that the case would seem to make the government an insurer as to all manner of bizarre incidents. Military regulations typically govern a wide range of base residents' activities, touching most aspects of private and public life. To hold the government potentially liable for all damage done by conduct on a military base that violates any one of the many base regulations would expand liability in ways inconsistent with

the idea that the FTCA must be strictly interpreted as a limited relinquishment of sovereign immunity. *See United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). By performing (or failing to perform) his duty to look after Rocky, Casey was not "furthering his employer's business" as such; his conduct was essentially "unrelated to the employment relationship[ ]." *Johnson v. Weinberg,* 434 A.2d 404, 408 (D.C.1981). Since we decline to follow the *Lutz* rationale, Sergeant Casey's conduct cannot be the basis for derivative liability under District of Columbia *respondeat superior* law. The United States consequently has no derivative liability under the FTCA for Casey's allleged negligence.[1]

### C.

■ The district court's alternative basis for holding the government liable was that the base security acted negligently within their scope of employment in failing to remove from the base a dog they knew to be dangerous. Unlike the question of the government's derivative liability for Sergeant Casey's conduct, this second theory of liability presents no scope-of-employment issue. The base security's duty to remove Rocky, if any, clearly arose within the scope of their employment: keeping the base secure for residents is what the security are paid to do. Because the base security clearly were within the scope of their employment, the FTCA permits the Nelsons to recover against the government if local law would permit recovery against a private employer under like circumstances. 28 U.S.C. § 1346(b) (1982); *see Cannon v. United States,* 645 F.2d 1128, 1133 (D.C.

1. Under District of Columbia law, a dog owner's lack of knowledge of his dog's vicious propensity will not absolve the owner from negligence if the dog injures a person while at large. D.C. Code Ann. § 6–1012 (1981). *Cf. Lutz v. United States,* 685 F.2d 1178, 1184 (9th Cir.1982) (under Montana statute, dog owner liable, without regard to knowledge of dog's vicious propensity, wherever bite occurs). In this case, Rocky was not at large; he was kept on Sergeant Casey's premises, behind a fence. Thus, the District of Columbia's leash control statute is not directly applicable.

We also need not decide whether, under District of Columbia law, keeping a vicious dog on the premises imposes strict liability on the owner. In this case, Sergeant Casey negligently kept the dog behind a fence that was obviously not high enough to prevent the dog from attacking any person who approached the fence. Moreover, it was foreseeable that children would approach the fence which abutted an alley often traveled by the neighborhood children.

Cir.1981). We therefore must consider whether, in the circumstances of this case, a private employer would be liable to Tracey Nelson under District of Columbia *respondeat superior* law.

■ The district court determined that the government was liable for the conduct of the base security by analogizing the base security to a dog owner. It explained that "[t]he police, having knowledge of the danger posed by a dog on base property and the ability to eliminate or control the danger should be liable for any attacks made by the dog just as any dog owner having similar knowledge and control would be." *Nelson*, 633 F.Supp. at 1268–69. This analogy, in our judgment, is inappropriate. Knowledge and control do not constitute ownership, either under District law or common understanding. If the analogy were accepted, it would be difficult to explain why metropolitan police, with similar knowledge and control, should not be viewed as owners so that the city is liable for the failure of the police to act. It is clear, however, that such derelictions by metropolitan police do not render a city liable. *See Morgan v. District of Columbia*, 468 A.2d 1306, 1313–15 (D.C.1983) (en banc) (police liable only if a special relationship exists; knowledge and control are not sufficient to trigger a special relationship). It therefore does not advance the analysis to analogize the base security, in their capacity which is like that of municipal police, to dog owners.

## III.

### A.

We agree with the district court that the base security were negligent. Under District of Columbia law, a landholder must act reasonably to maintain its property in a reasonably safe condition in view of all the circumstances including the likelihood of injury, the seriousness of the injury, and the burden of avoiding the risk. *Smith v. Arbaugh's Restaurant*, 469 F.2d 97, 100 (D.C.Cir.1972). We hold that the government, through its employees the base se-

curity, breached that duty to Tracey Nelson.

Although, the district court did not rely on this theory, we may affirm a trial court's decision on a basis not relied on by the district court, *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970), where that ground finds support in the record. *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957); *Grosz v. Andrus*, 556 F.2d 972, 974 n. 3 (9th Cir.1977); *Potter v. LaMunyon*, 389 F.2d 874, 876 (10th Cir. 1968). As we illustrate below, this line of liability has more than adequate support in the record before us.

### B.

Under the common law, the standard of care owed by owners or occupiers of land to persons who come on to the land was determined by that person's status. A trespasser could generally only recover for injuries that were willfully or wantonly inflicted, or caused by a hidden engine of destruction (*e.g.*, a trap). *Washington Metro. Area Transit Auth. v. Ward*, 433 A.2d 1072 (D.C.App.1981). Toward a licensee, the landowner was required to refrain from active negligence, which included failure to warn of known but hidden perils. *Firfer v. United States*, 208 F.2d 524, 528 (D.C.Cir. 1953); *Smith v. Arbaugh's Restaurant*, 469 F.2d 97, 100 (D.C.Cir.1972). Only for the invitee was the landowner required to exercise ordinary care and prudence to render the premises reasonably safe and to discover dangerous conditions. *Willis v. Stewart*, 190 A.2d 814, 816 (D.C.App.1963); *Arbaugh's Restaurant*, 469 F.2d at 97.

Under this tripartite scheme, a trespasser was a person who came on the land without permission, a licensee was a person who came on the land with permission, and an invitee was a person whose presence on the land was beneficial to both the owner and the user. *See Willis*, 190 A.2d at 816.

The District of Columbia has partially abandoned the common law's tripartite scheme. Instead, the District has adopted a dual standard under which reasonable care is the test for a landowner's duty of

care toward both licensees and invitees. *Arbaugh's Restaurant*, 469 F.2d at 100; *Washington Metro. Area Transit Auth. v. Ward*, 433 A.2d 1072 (D.C.App.1981); *Holland v. Baltimore & O.R.R.*, 431 A.2d 597, 599 (D.C.App.1981).[2] Under the reasonable care standard, the common law distinctions are retained only insofar as the foreseeability of the entrant's presence bears on the question whether the landowner acted with reasonable care. *Ward*, 433 A.2d at 1074 (Ferren, J., concurring).

Tracey Nelson was obviously not a trespasser on the base. She was at least a licensee, if not an invitee, and thus entitled to the "reasonable care" standard. Military members and their families live on base largely for the convenience and benefit of the military; Tracey Nelson was invited by the military to be present in the residential areas of the base. *Willis*, 190 A.2d 814. Moreover, Tracey Nelson's presence in the alley-way behind the Casey's house was foreseeable. The alley was routinely used by the neighborhood children to reach a school bus stop and a playground.

*Nelson v. United States*, 633 F.Supp. 1263, 1265 (D.D.C.1986).

Thus, the question, as it regards Tracey Nelson and Rocky, is whether the landowner (through its employees) acted as a reasonable person in maintaining the base properly in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others and the burden of avoiding the risk.[3]

Although the government attempts to downplay the gravity of Rocky's previous two attacks on children, arguing that the previous incidents did not give the police reason to conclude that the dog posed an unreasonable danger to base residents, the likelihood of serious injury was high. In the first incident Rocky bit and punctured the nose of an 8–year-old boy; in the second, the dog lacerated a 9–year-old boy. The base security were in possession of two animal bite reports and one incident report indicating that Rocky had attacked the two children. Indeed, in the incident report, Sergeant Casey expressly stated that the dog would bite. The written comments to the reports indicate that the at-

---

**2.** The District of Columbia courts have declined to adopt the reasonable care standard for trespassers. *Washington Metro. Area Transit Auth. v. Ward*, 433 A.2d 1072, 1074 (D.C.App.1981); *Holland v. Baltimore & O.R.R.*, 431 A.2d 597 (D.C.App.1981), retaining instead the traditional common law standard of limited recovery.

**3.** The conclusion that military officials breached a duty of reasonable care to Tracey Nelson is bolstered by the special status of even trespassing children under the common law. Though the common law was generally favorable to the landowner, courts were solicitous of young children. *McGettigan v. National Bank of Washington*, 320 F.2d 703, 707 (D.C.Cir.), *cert. denied*, 375 U.S. 943, 84 S.Ct. 348, 11 L.Ed.2d 273 (1963). The attractive nuisance doctrine was a legal device used by courts which turned trespassing children (to whom the landowner owed almost no duty of care) into invitees (to whom the landowner owed a high duty of care). Comment, *The Common Law Tort Liability of Owners and Occupiers of Land: A Trap for the Unwary?* 36 Md.L.Rev. 816, 832 (1977).

The landowner was liable because its conduct in maintaining the dangerous condition carried an unreasonable risk of harm to children when the presence of children on the premises was excepted. *McGettigan*, 320 F.2d at 707. The landowner could be liable even where third persons created the dangerous condition if, after reasonable opportunity to remedy the situation, the owner failed to do so. *Id.* In order for the landowner to be liable to the child, the landowner must have known about the dangerous condition.

These principles, developed in the context of the attractive nuisance doctrine, are also applicable to a child like Tracey Nelson who is already an invitee. The policy of protecting trespassing children rests on the value of children to society. *Id.* at 706. The rationale for imposing a higher standard of care upon landowners when dealing with foreseeable child-trespassers was not any notion of implied invitation, but a policy decision that society is best served by encouraging landowners to prevent injury to small children. *Luck v. Baltimore & O.R.R.*, 510 F.2d 663, 667 (D.C.Cir.1975). Thus, the landowner's duty of care to the child is measured by the "reasonably foreseeable dangers to the child qua child not qua trespasser." *Daisey v. Colonial Parking, Inc.*, 331 F.2d 777 (D.C.Cir.1963).

Thus, even if Tracey Nelson had been a trespasser, the landowner might have been liable. Rocky, a dog who had twice previously attacked children, was a condition on the landholder's property which was dangerous to children. Moreover, the landholder had actual knowledge of the condition and a reasonable opportunity to correct it.

tacks were unprovoked. We do not disturb the district court's finding of fact that the base commander or his delegates knew that Rocky was capable of inflicting serious injury, particularly on small children. The burden of avoiding the risk would have been slight. Because the military has plenary authority over the right of base residents to keep pets, the base commander had the power to remove the dog or ask the Caseys to leave at anytime. There is also no doubt that base security police could have removed Rocky if they had chosen to do so.

We believe that a District of Columbia court would hold the government accountable for the negligence of its employees— the base commander and his agents—the base security. *See Cook v. Safeway Stores*, 354 A.2d 507, 510 (D.C.1976); *District of Columbia v. Doe*, 524 A.2d 30 (D.C.1987).

### C.

 The appellant's attempt to liken the duty of the base police to Tracey Nelson to the duty of a municipal police force to a citizen is inapposite. It is well established that the duty of police officers to protect citizens is a general one; it is not owed to any particular citizen. *Morgan v. District of Columbia*, 468 A.2d 1306, 1310–12 (D.C. 1983) (en banc). The case at hand, however, is distinguishable from the situation of municipal police officers.

Base security serve multiple roles on the base, only some of which are similar to those of municipal police. Thus, although base security officials often perform tasks identical to those of municipal police forces, they also have additional duties that are very different. The base regulation authorizing base security to remove a dangerous animal is more like the authority of a building superintendent or property manager than it is like a municipal police force's authority to protect the public and enforce the law.

We wish to emphasize that our holding is confined to those duties of base security which involve property management. We specifically exclude those duties of base security which are like those of municipal police. District of Columbia law on the liability of the municipality for the conduct of its police is set out in *Morgan v. District of Columbia*, 468 A.2d 1306, 1311 (D.C. 1983) (en banc).

### IV.

In sum, we disapprove of the district court's reasoning that finds the government liable because Sergeant Casey failed to control his dog. We also disapprove of the analysis which finds the government liable because base security are deemed to be an owner of the dog. We agree, however, that base security were negligent and affirm the district court's judgment because the government, as a landowner, breached its duty to maintain its property in a reasonably safe condition.

For the foregoing reasons, the judgment of the district court is hereby

*Affirmed.*