904 F.2d 78
 284 U.S.App.D.C. 258
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Karval Douglas MANDERSON, Appellant.
 No. 88-3082.
 United States Court of Appeals, District of Columbia Circuit.
 June 11, 1990.
 
 Before SILBERMAN, STEPHEN F. WILLIAMS and CLARENCE THOMAS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of counsel. The court has reviewed the issues fully and is satisfied that appropriate disposition of the appeal occasions no need for a published opinion. See D.C.Cir.R. 14(c). For the reasons stated in the accompanying memorandum, it is therefore
 
 
 2
 ORDERED and ADJUDGED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 Karval Douglas Manderson appeals from a conviction on one count of possessing cocaine with the intent to distribute, 21 U.S.C. Sec. 841(a)(1), and one count of conspiring to violate the narcotics laws, 21 U.S.C. Sec. 846. Manderson argues that the district court improperly admitted two items of proof into evidence, and that his conviction should thus be reversed. We reject his contentions and affirm.
 
 
 5
 Manderson first argues that the district judge erred in admitting a statement that Manderson gave to a Drug Enforcement Administration (DEA) agent shortly after his arrest. Manderson, a native of Jamaica, argues in essence that a language barrier made it difficult for him to understand the warnings required by Miranda v. Arizona, 384 U.S. 436, 467-73 (1966), when the DEA agent read them to him, and that therefore he could not have knowingly waived his Miranda rights.
 
 
 6
 Law enforcement personnel must furnish Miranda warnings to a defendant held in custody before they can interrogate him. A defendant can waive his Miranda rights, however, and if the government proves by a preponderance of the evidence, Colorado v. Connelly, 479 U.S. 157, 168 (1987), that he waived his rights "voluntarily, knowingly and intelligently," Miranda, 384 U.S. at 444, the defendant's confession can be used as evidence against him. A district court assesses the existence vel non of a waiver by considering " 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.' " North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); see, e.g., United States v. Yunis, 859 F.2d 953, 961 (D.C.Cir.1988). We review that determination de novo, "nonetheless mindful that the trial court's subsidiary factual findings are to be upheld unless clearly erroneous." Yunis, 859 F.2d at 958.
 
 
 7
 The government more than met its burden here of proving by a preponderance of the evidence that Manderson did, in fact, waive his Miranda rights "voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. DEA agent Kenneth Rosel testified at the suppression hearing that he read the text of a "Miranda card" to Manderson.[1] Transcript of Suppression Hearing (Tr.Supp.Hrg.) at 11-12. When Rosel asked Manderson if he understood, Manderson answered "Yes." Id. at 12, 23; see Butler, 441 U.S. at 373 ("An express ... oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver."). Later, Manderson responded to some of the questions posed to him and refused to answer others. Tr.Supp.Hrg. at 25-26; see United States v. Boon San Chong, 829 F.2d 1572, 1574 (11th Cir.1987) ("An accused's decision to answer some questions, but not others, further supports a finding of an implied waiver--the accused's selective responses suggest an understanding of the right not to respond."). Rosel testified at the hearing that he was convinced that Manderson understood the Miranda warnings, and Manderson proffered no proof, direct or circumstantial, to rebut Rosel's conclusion. Cf. United States v. Frazier, 476 F.2d 891, 897 (D.C.Cir.1973) ("[W]hile a defendant does not have the obligation to testify himself or to offer testimony [at a suppression hearing], a court cannot supply evidence that is lacking.") (citation omitted). In sum, the uncontradicted evidence in the record demonstrates that Manderson's waiver reflected "an uncoerced choice and the requisite level of comprehension." Moran v. Burbine, 475 U.S. 412, 421 (1986). The district court's decision was proper.
 
 
 8
 Manderson also challenges the district court's decision to admit, during cross-examination of Manderson, a receipt for a wire transfer of $8300. He argues that the receipt was irrelevant, hence inadmissible. Fed.R.Evid. 401, 402. He further argues that even if the receipt was relevant, its "probative value [was] substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403.
 
 
 9
 We review here the propriety of the trial court's decision to admit the wire transfer receipt into evidence, and not the reasoning offered to support it. See United States v. Cruz, 797 F.2d 90, 97 n. 2 (2d Cir.1986) ("[W]e may uphold the admission [of evidence] on any theory [that] finds support in the record, regardless of the ground relied on by the trial court."); cf. Nelson v. United States, 838 F.2d 1280, 1285 (D.C.Cir.1988) ("[W]e may affirm a trial court's decision on a basis not relied on by the district court, where that ground finds support in the record.") (citation omitted); United States v. Burke, 781 F.2d 1234, 1243 (7th Cir.1985). At trial, Manderson claimed that he had travelled from Miami to Washington on August 26, 1987; that he had gone from Washington to Winchester, Virginia to play cricket with a friend, Guard Jones; and that he had spent his nights in Winchester at Jones's house. See Tr. at 111-12, 132. Manderson admits that he sent money by wire from Winchester to Miami. See id. at 125. The receipt for the transfer was dated August 24 and showed an address different from Guard Jones's. The receipt was thus relevant to rebut Manderson's testimony concerning his trip from Miami, which formed the basis of his alibi defense. Fed.R.Evid. 401, 402.
 
 
 10
 Although it is the better practice for trial courts to state their reasons in striking the balance required by rule 403, see 1 J. Weinstein & M. Berger, Weinstein's Evidence p 403, at 403-27 to 403-28 & n. 11 (1989) (citing cases), they are not explicitly required to do so. While the district judge here (like everyone else in the courtroom) was mistaken as to the facts surrounding the wire transfer, the receipt was actually more probative than the district judge thought when he admitted it. Thus, the district court's implicit determination that the receipt's value outweighed the danger of undue prejudice was well within the court's discretion. See United States v. Perholtz, 842 F.2d 343, 358 (D.C.Cir.) (per curiam), cert. denied, 109 S.Ct. 65 (1988).
 
 
 
 [1]
 Reading from a printed card that contained language faithful to the mandate of Miranda, Agent Rosel told Manderson:
 Before we ask you any questions you must understand you have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. Do you understand?
 Transcript of Suppression Hearing at 12.