**Arlene KAHN, Plaintiff,**

v.

**UNITED STATES, Defendant/Third Party Plaintiff,**

v.

**ELEVATOR TECHNOLOGIES, INC., Defendant/Third Party Defendant.**

**Civ. A. No. 88–828 SSH.**

United States District Court, District of Columbia.

July 23, 1992.

---

William F. Mulroney, Ashcraft & Gerel, Washington, D.C., for Arlene Kahn.

Charles L. Hall, Asst. U.S. Atty., Washington, D.C., for the U.S.

Thomas B. Morrison, Rockville, Md., for Elevator Technologies, Inc.

## OPINION

STANLEY S. HARRIS, District Judge.

The Court held a trial in this case March 18–20, 1992.[1] Plaintiff is suing the United States and Elevator Technologies, Inc. (ET), for injuries allegedly suffered from an incident at the John F. Kennedy Center for the Performing Arts on January 19,

---

1. The case was in mediation from May 7 to July 13 of 1990, but did not settle.

1985. The United States has made a third party claim against ET alleging that if it is liable to plaintiff, then it is entitled to indemnification or contribution from ET. Plaintiff demanded a jury trial on its claim against ET; the claim against the United States and the third party claim were tried simultaneously to the Court.

After weighing the credibility of the witnesses and carefully considering all the evidence presented at trial, the Court finds the following facts. On January 19, 1985, Ms. Kahn attended a matinee at the Kennedy Center, which ended in the early evening, around 7:00 or 7:30 pm. She and her date went into the Kennedy Center's garage on the C-level.[2] Once in the garage, Ms. Kahn decided to return to the Kennedy Center. She was "rushing" in the south lobby of the C-level when she stepped into the elevator farthest from the entrance from the garage, designated the 4E2 elevator. The door to the elevator was open and the lights were on. The elevator floor was approximately 20 to 24 inches below the C-level corridor floor. Ms. Kahn landed on her feet and fell forward. She landed on the floor, and then was helped out by a bystander, Bruce Jones. After unsuccessfully trying to contact Kennedy Center personnel, Ms. Kahn was driven to her home by her date. She did not seek medical attention on the night of the accident.

The day after the accident, Ms. Kahn went to the Greater Southeast Community Hospital complaining of pain in her neck. According to Ms. Kahn's testimony, the hospital gave her a muscle relaxant for her pain. Seven months later, she sought attention for back pain at the NASA health clinic in August of 1985. Subsequently, she visited Dr. J. Peter Murphy, Dr. Harvey N. Mininberg, Dr. Peter Kenmore, and Dr. Robert A. Mendelsohn, complaining of back pain and pain in her left leg.

*Government's Negligence*

 Plaintiff is suing the Kennedy Center under the Federal Tort Claims Act on a theory of negligence to recover for these injuries. *See* 28 U.S.C. § 2671 *et seq..* After considering the credibility of plaintiff's key witnesses, the Court finds that for the doors of the elevator to have been open and the lights to have been on, someone must have used a key to lock the doors in an open position. Henry Huntt, plaintiff's elevator expert, testified that if an elevator malfunctioned, its doors would close automatically. In his opinion, for the elevator to be standing with the lights on and the doors open, the overwhelming probability was that someone keyed them open. On that Saturday, only Kennedy Center personnel had control of keys to the elevator. On Monday through Friday, someone from ET was on site with keys, but there is no evidence to show that anyone from ET came to the Kennedy Center on Saturday. Even assuming someone from ET may have come (and there is no evidence that anyone did), the weekend emergency personnel from ET did not have keys to the Kennedy Center elevators. Therefore, the Court finds that someone from the Kennedy Center must have keyed the doors open.

Thomas Wintermayer, the electrician at the Kennedy Center on the date of the incident from 3:30 p.m. to 12 midnight, testified that he did not have a present recollection of the events from that evening. Further, he testified that his log from that evening would record any unusual happenings. His log shows that he checked all the passenger elevators between 5:30 p.m. and 7:30 p.m. and that they were all functioning properly. His log does not indicate any malfunction later in the evening. Nevertheless, Wintermayer was the only one on the scene with keys, and the Court finds that he must have keyed the doors open. The Court concludes that leaving the elevator in such a posture under the facts of this case was negligent and breached a duty of reasonable care owed to Ms. Kahn. *See Nelson v. United States*, 838 F.2d 1280, 1285–86 (D.C.Cir.1988) (noting that in the District of Columbia "reasonable care is the test for a landowner's duty of care toward both licensees and invitees").

---

**2.** Ms. Kahn did not call her date to testify.

## Plaintiff's Contributory Negligence

■ Although the Court finds negligence on the part of the United States, it also finds by a preponderance of the evidence that the plaintiff was contributorily negligent. The Court finds that there was adequate lighting such that a person using reasonable care would have noticed the rather obvious condition of the elevator. Although plaintiff testified that the area was dimly lit, the Court credits the testimony of Jones who described it as "medium" lighting, neither dimly nor brightly lit. Jones, a bystander, described plaintiff as "hurriedly" walking past him in the corridor toward the elevator. Plaintiff testified at trial that she was "walking briskly" and at deposition that she was "rushing." The Court finds that she was walking too quickly to take adequate care.

In addition, on cross-examination, she testified that she looked down where she was walking a foot before she reached the elevator, but did not look at the floor of the elevator. On direct she testified that the walls of the elevator blended in with the floor so she could not notice the misleveled elevator, but on cross-examination she testified that she approached at an angle from the elevator implying that she could not really see into the elevator. The Court finds neither of these statements credible. Exhibits admitted into evidence as well as testimony from Kennedy Center personnel, which the Court credits, show that the corridor is white marble and in sharp contrast to the red carpet of the elevator. The walls of the elevator are a mahogany wood. Photographs of the elevator in the approximate position in which plaintiff entered it clearly show a large portion of the mechanical part of the elevator exposed at the top, as well as a large drop at the floor level between the white corridor and the red rug.

The Court finds that if plaintiff had been using the care that a reasonable person would under the circumstances, she would not have stepped into the elevator, let alone fallen. Because the Court finds plaintiff contributorily negligent, she cannot recover for her injuries.[3] See Brown v. Clancy, 43 A.2d 296, 298 (D.C.1945) ("[I]f [plaintiff] fails to see what the evidence conclusively shows is there to be seen, the law ... bars recovery for his injuries.")

## Directed Verdict as to ET

■ At the close of plaintiff's case, the Court directed a verdict in favor of ET on the basis that there was no evidence of negligence by ET.[4] There also was no evidence of notice to ET of a problem with the elevator. In addition, there was no evidence of negligent maintenance.

■ Further, the Court found that the concept of res ipsa loquitur to infer negligence by ET would be inappropriate under the facts of this case. See Otis Elevator Co. v. Henderson, 514 A.2d 784, 785 (D.C. 1986).[5] There is no evidence that ET had control of the elevators at the Kennedy Center on the day of this accident. The only evidence of negligence was that the elevator doors had been keyed open.

3. Nevertheless, even if the Court had not found plaintiff contributorily negligent, it would have found that the only injuries proven by a preponderance of the evidence to have been proximately caused by the Kennedy Center incident were her neck pains.

4. Stating that cases by courts of appeals encourage trial judges to wait and grant a j.n.o.v. instead of granting a motion for a directed verdict, plaintiff's counsel pleaded with the Court to let the case go to the jury. The Court, however, believes that it is incorrect in such a clear-cut case to send the case to the jury only to set the verdict aside if it does not reach the correct result. In addition, the earlier cases regarding preference for j.n.o.v. were written before the calendars of federal courts became overburdened with criminal cases. In this case, the Court found that allowing the case to go to the jury would have been inappropriate.

5. As the Otis Elevator opinion states:

To make out a prima facie case under a res ipsa loquitur theory, the plaintiff must present sufficient evidence to establish three elements:

(1) The event must be of the kind which ordinarily does not occur in the absence of someone's negligence;

(2) it must be caused by an agency or instrumentality within the control (exclusive or joint) of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

Otis Elevator Co., 514 A.2d at 785 (citations omitted).

There was no evidence that anyone from ET was at the Kennedy Center on the day of the accident. Therefore, the only possible negligence which could be reasonably found—that the doors had been keyed open—could only have resulted from actions by an employee of the Kennedy Center. Indeed, plaintiff acknowledges that "it is undisputed that the elevator was in the exclusive control of the United States at the time of Mrs. Kahn's injuries." *See* Plaintiff's Post Trial Memorandum, at 6.

*Government's Cross-claim*

Due to the findings above, the Court does not reach the issue of contribution or indemnity. Since the United States owes plaintiff nothing, the issue is moot.

*Summary*

For the reasons stated above, the Court finds that both the government and plaintiff were negligent. Therefore, the Court finds in favor of the United States and against Ms. Kahn. As to plaintiff's claim against ET, the Court directed a verdict in favor of ET and against Ms. Kahn. The cross-claim by the United States is denied as moot. An appropriate Order accompanies this Opinion.

ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that, in *Kahn v. United States*, judgment is entered in favor of the United States. It hereby further is

ORDERED, that, in *Kahn v. Elevator Technologies, Inc.*, judgment is entered in favor of Elevator Technologies based upon the Court's end-of-trial granting of the motion for a directed verdict. It hereby further is

ORDERED, that the United States' third party claim against Elevator Technologies is denied as moot.

SO ORDERED.