**Julia A. STANLEY, Individually and as the Natural Guardian and Parent of Laura Stanley, an Infant, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 93–CV–0097E(M).**

United States District Court, W.D. New York.

May 17, 1995.

Charles S. Carra, Damon & Morey, Buffalo, NY, for plaintiff.

Michael T. Truscott, Trial Attorney, Torts Branch, Civil Division, U.S. Dept. of Justice, Washington, DC, for defendants.

### MEMORANDUM and ORDER

ELFVIN, District Judge.

In this "dog-bite" case arising under the Federal Tort Claims Act ("the FTCA")[1], defendant United States of America moves for summary judgment. Such motion will be granted.

 Summary judgment is appropriate if it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCvP[2] 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The defendant, as the moving party or movant, need not negate the non-moving plaintiff's or "non-movant's" position; it simply has to point out the lack of evidence supporting her claim. She, in opposing the motion and in light of her evidentiary burden, must then present competent evidence showing that there is a genuine issue for trial. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 324, 106 S.Ct. 2548, 2552, 2553, 91 L.Ed.2d 265 (1986); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). In reviewing a summary judgment motion, "a district court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). In support of their positions and in accordance with this Court's Local Rule 56, the parties have submitted their respective statements of undisputed and disputed facts. *See* United States' Statement of Undisputed Facts ("the Defendant's Fact Statement"); Plaintiff's Statement of Disputed Facts ("the Plaintiff's Fact Statement"). To the extent that each is buttressed by affidavits and supporting papers in accordance with FRCvP 56(c) & 56(e), this Court has determined that certain facts are undisputed and serve as the basis for the analysis and conclusions contained herein.

The plaintiff is the mother of the infant Laura Stanley, both of whom resided at a Department of Defense Family Housing Facility in Niagara Falls, N.Y. during the time period of the events in question. The mother's husband and Laura's father was a member of the United States military. On August 7, 1990 Laura was bitten and injured by a dog owned by the Pritchard family, which lived at the same facility.

William Pritchard, III, was the Public Affairs Officer for the United States Navy Recruiting District in Buffalo, N.Y. As such he was responsible for local recruiting activities—*e.g.,* coordinating publicity, visiting schools, arranging for potential recruits to visit naval vessels in the area and apprising naval personnel of his efforts and the results thereof.

Pritchard and his family owned two malamute dogs while residing in the military housing, one of which was "Goldie," a bitch. There were and are Department of Defense rules and regulations governing pets in military housing.[3] Such rules and regulations

---

1. 28 U.S.C. § 1346(b).

2. Federal Rules of Civil Procedure.

3. Pertinently, these regulations state:

"While residing in government quarters you will not be allowed more than two pets (excluding birds and fish). No increase in the allowed number of pets will be permitted except temporarily in the case of animals having litters. The total number of pets must be reduced to two within four months subsequent to the birth of the litter. * * *

\* \* \* \* \* \*

"Noisy, bad-tempered, or untrained animals are considered nuisances and will not be tolerated. You are financially responsible for damages caused by your pet. * * * Additionally, no pet shall be allowed to run loose within the housing area.

"If assigned quarters are fenced, pets may run loose within the confines of the fence * * *. If quarters are not fenced, pets may be tethered to a stake, provided the tether keeps

are applicable to all pet owners—not just those in the military, but also their spouses, children and invited guests. Pritchard advised the military housing officials that these pets would be kept at his family's residence. These dogs did not relate to Pritchard's duties as a Public Affairs Officer but were kept solely for the pleasure of his family. Shortly after the Pritchards had moved into their residence in the Spring of 1988, they requested and received permission from the housing project manager to erect fencing to contain the dogs and did so. In April of 1989, after investigating complaints regarding the number of pets the Pritchards owned, the manager discovered that they actually owned and housed three dogs and two cats in violation of the above-noted regulations. The manager requested that Pritchard "decrease the number of pets to two" and informed Pritchard that "Non compliance of these regulations may result in a warning letter to terminate government housing." Exhibit A attached to Plaintiffs' Appendix. It is undisputed that, at the time of events in question, the Pritchards owned and housed only two pets—Goldie and the other malamute. Prior to the events of August 7, 1990 the manager had never received any complaints of and was not aware of any vicious or dangerous propensity or any indication of such in either dog.

In early August 1990 Goldie had puppies and was being kept in the Pritchards' garage with her litter. On August 7th Pritchard's five-year old son invited Laura over to his house and, after receiving the permission of her mother to do so, she and her sister Sarah accompanied the boy to his home. He asked his parents if the girls could see the puppies, but was not permitted to do so; he was told that Goldie would not want people around her puppies. Shortly thereafter, while the children were playing in the backyard, the boy told the girls to follow him. He then brought them to the back door of the garage and opened it, whereupon Goldie ran out and

bit Laura. No member of the Pritchard family is a defendant in this suit.

Pursuant to a stipulation between the parties and the approval of this Court, the second and third claims of the four-claim Amended Complaint, filed June 9, 1993, were dismissed with prejudice.[4] Order filed March 21, 1994. What remains is an action under the FTCA wherein the plaintiff asserts that, under the rules and regulations of the Department of Defense, Pritchard was charged with the duty of controlling Goldie and that the Department of Defense was charged with enforcing its rules and regulations concerning the care and ownership of pets on military housing complexes. The Amended Complaint further alleges that the whelping Goldie was locked in the garage because of her dangerous propensities, that Goldie was not under Pritchard's control as was required and that Goldie attacked and injured Laura. It is further alleged that Pritchard was acting within the scope of his employment and was delegated the specific duty to keep Goldie safely restrained. Amended Complaint at ¶ 15. Thus, it is asserted that the defendant is vicariously liable for Pritchard's negligence, if any, under the doctrine of *respondeat superior*. The Fourth Claim for Relief is derivative from the First and seeks additional damages for Laura's past, present and future medical and dental treatment.

■ The FTCA states in part:

"[T]he district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * personal injury * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his * * * employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

---

the pet within the boundaries of your assigned lawn area. * * * " Exhibit B attached to Appendix of Exhibits to Plaintiff's Statement of Disputed Facts and Memorandum of Law ("Plaintiff's Appendix").

**4.** The Second Claim for relief was essentially premised on the defendant's liability as a landlord; the Third Claim for relief was based on its constructive or actual knowledge of Goldie's vicious propensities and its failure to act in light of such knowledge.

Pritchard was at the time a federal employee for FTCA purposes under 28 U.S.C. § 2671 which further states that " 'Acting within the scope of his office or employment', in a case of a member of the military or naval forces of the United States * * * means acting in line of duty." As applied to this case, the FTCA operates as a waiver of the United States's sovereign immunity for torts committed by government employees to the extent that a similarly-situated private person would be held liable under New York law. *Chen v. U.S.*, 854 F.2d 622, 625–626 (2d Cir.1988). Thus, this Court must determine whether there is a genuine issue whether Pritchard was acting within the scope of his employment which, under New York law, would supply a basis for imposing liability upon the defendant under the theory of *respondeat superior*.[5] As is illustrated above, this Court is not relying on any conflicting evidence in its ruling and there are no disputed material facts; thus, summary judgment is an appropriate vehicle for the disposition of this matter. *Mary KK v. Jack LL*, 203 A.D.2d 840, 611 N.Y.S.2d 347 (3d Dep't 1994) (summary judgment is appropriate on the "scope of employment" issue where there is no conflicting evidence or the facts are undisputed).

 Under New York law, an employer may be found liable for the tortious behavior of its employee if such was within the scope of the latter's employment. *Hall v. Danforth*, 172 A.D.2d 906, 567 N.Y.S.2d 958, 959 (3d Dep't 1991) (deer hunter shot by farm employee after being invited by employee to hunt on farm brought personal injury action against employee and farm owner; summary judgment granted to farm owner who, because employee was engaged in purely personal action and was not doing anything in furtherance of duty he owed to owner, was not liable—*citing Murray v. Watervliet City School Dist.*, 130 A.D.2d 830, 515 N.Y.S.2d 150 (3d Dep't 1987)). *Hall* further states that, if the tort was committed by the employee solely for personal ends, rather than in furtherance of or incident to the employer's business, liability for the employee's acts

may not be imputed to the employer. *Ibid.* (*citing Horowitz v. Sears, Roebuck & Co.*, 137 A.D.2d 492, 524 N.Y.S.2d 236 (2d Dep't), *appeal denied*, 72 N.Y.2d 803, 532 N.Y.S.2d 368, 528 N.E.2d 520 (1988)). *See also Mary KK, supra* (regarding school district's liability, the court held acts of sexual misconduct by teacher were clearly outside scope of teacher's employment and thus theory of *respondeat superior* did not apply); *Joseph v. City of Buffalo*, 187 A.D.2d 946, 590 N.Y.S.2d 350, 351 (4th Dep't 1992) (city could not be held liable for injuries suffered by individual who shot himself with police officer's weapon; court concluded that officer, while at home with his family, was not engaged in any police business), *aff'd*, 83 N.Y.2d 141, 608 N.Y.S.2d 396, 629 N.E.2d 1354 (1994); *Joshua S. v. Casey*, 206 A.D.2d 839, 615 N.Y.S.2d 200 (4th Dep't 1994) (school, church and diocese were not liable under theory of *respondeat superior* for alleged abuse because abuse was not within scope of employment and could not be said to have been in furtherance of school's, church's or diocese's business). As New York's Court of Appeals stated, in order to impute liability to an employer, "it suffices that the tortious conduct be a natural incident of the employment." *Riviello v. Waldron*, 47 N.Y.2d 297, 304, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979).

Further guidance on this "scope of employment" issue within the context of military service is also available at the federal level, where it has been a matter of contention. Surprisingly, this legal issue has arisen several times under facts almost identical to the instant matter, with the Sixth, Eighth and District of Columbia Circuits' Courts of Appeals holding that the United States is not vicariously liable under *respondeat superior* via the FTCA and the Ninth Circuit's concluding otherwise. *See Chancellor by Chancellor v. U.S.*, 1 F.3d 438 (6th Cir.1993); *Piper v. U.S.*, 887 F.2d 861 (8th Cir.1989); *Nelson v. U.S.*, 838 F.2d 1280 (D.C.Cir.1988); *Lutz v. United States*, 685 F.2d 1178 (9th

5. To the extent that the plaintiff's claim might be said to be based on a duty created under the Department of Defense's military housing regulations, such is beyond the scope of the FTCA and the subject matter jurisdiction of this Court thereunder. The relevant inquiry is confined to New York's tort law. *See Chen*, 854 F.2d at 625–627.

Cir.1982). *See also, e.g., Brotko v. U.S.,* 727 F.Supp. 78 (D.R.I.1989).

In urging the conclusion that controlling a family pet was within the line of Pritchard's duty as a member of the military, the plaintiff highlights the "special factors" of military service, distinguishing it from garden-variety, civilian employment. *See Lutz,* 685 F.2d at 1182–1183; *Craft v. United States,* 542 F.2d 1250, 1255 (5th Cir.1976), *reh'g denied,* 546 F.2d 906 (5th Cir.1977); *Weaver v. U.S. Coast Guard,* 857 F.Supp. 539, 542–548 (S.D.Tex.1994). In *Lutz,* the government was found liable for the dog-bite injuries sustained by a young girl under facts similar to those herein. The military regulation pertinent to household pets was viewed by the Court as a "security" regulation, the purpose of which was to promote health and safety on the base.

> "We view base security as a regular military activity. Clearly, the employee to whom the security duty is delegated cannot be said to act entirely for his own benefit. Upon assignment of that duty, the employee who controls his dog acts in furtherance of his employer's interest in promoting order and safety on base." 685 F.2d at 1183.

As such, the United States Court of Appeals for the Ninth Circuit concluded that control over a household pet was therefore within the scope of the owner/serviceman's employment. *Ibid. Lutz* relied upon the analysis of *Craft, supra,* wherein a serviceman injured a child while mowing the lawn adjacent to his assigned housing. 542 F.2d at 1253. As *Lutz* notes, "[b]ecause the *Craft* soldier performed a specifically assigned duty enforced through the threat of military discipline, he acted within the scope of his employment" resulting in the imposition of FTCA liability on the government. *Lutz,* 685 F.2d at 1183. In extending the reach of *Craft, Lutz* notes, however, that "[w]e do not suggest that every act of a base resident is within the scope of his employment. Such a rule would impose upon the military a liability far broader than that of a private employer, contrary to the limited waiver intended by the FTCA." *Ibid.* It nonetheless imposed liability on the

military for the dog-bite injuries inflicted by a family pet.

As is pointed out in *Nelson* (another case factually similar to the instant matter), if *Lutz* does not "suggest that every act of a base resident is within the scope of his employment," such is certainly the effect of its reasoning. *See Nelson,* 838 F.2d at 1283–1284 ("We doubt the adequacy of the *Lutz* rationale"). *Lutz* states in effect that, if there is a military regulation addressing a matter, that matter is within a serviceman's scope of employment and such supplies a basis for an FTCA suit in federal court. *Nelson,* however, draws the appropriate distinction between the military's regulation of matters related to furthering or benefitting its "business"—the proper context of *respondeat superior*—and its regulation of matters, such as housing, that were only incidental (or unrelated) to employment. *Ibid.* As an illustration of this distinction, *Nelson* cites military regulations that "require base residents to use certain size pots and pans, to replace electrical fuses, and to refrain from smoking in bed"—matters which have little to do with a serviceman's "employment." *Ibid.* The present regulation does not even have an incidental bearing on the employee-employer relationship. It attaches primarily to housing and not to personnel—i.e., it is equally as applicable to civilians living on base as it is to servicemen and it does not apply to servicemen living off base. It only benefits or furthers the defendant's "business" in a most attenuated sense. In addition, *Nelson* states:

> "[W]e do not believe that it is possible to place every duty imposed by base regulation within the employer-employee relationship. Instead, *whether a breach of military regulations subjects the government to tort liability must depend upon whether analogous duties exist under local tort law.* [emphasis added] * * *.
>
> "There seems, moreover, to be no principled limit to the reasoning in *Lutz,* so that the case would seem to make the government an insurer as to all manner of bizarre incidents. Military regulations typically govern a wide range of base residents' activities, touching upon most aspects of private and public life. To hold the government potentially liable for all damage

done by conduct on a military base that violates any one of the many base regulations would expand liability in ways inconsistent with the idea that the FTCA must be strictly interpreted as a limited relinquishment of sovereign immunity." *Id.* at 1284.

As such, it is irrelevant that the federal military has a regulation governing the control and housing of pets at its housing facilities unless the purported duty created thereunder is analogous to a duty found under the state's tort law.

The United States Court of Appeals for the Eighth Circuit has also rejected the rationale and result of *Lutz* and has adopted the logic of *Nelson* in declining to hold that a serviceman was acting within the scope of his employment when he failed to properly control his household pet. *Piper,* 887 F.2d at 863–864. It is also noted that, while *Piper* states that there was an unresolved issue whether responsible military personnel had negligently performed their duties—*i.e.,* whether they knew or should have known of the threat posed by the animal—, such is, however, irrelevant to the present inquiry inasmuch as the instant parties stipulated to the dismissal with prejudice of similar allegations contained in the Amended Complaint. *See* fn. 3, *supra,* and accompanying text.

Additionally, another factually similar case—*Chancellor, supra*—has also rejected *Lutz* and adopted the reasoning of *Nelson* and *Piper.* 1 F.3d at 439–440.

A recent case in the Second Circuit is mentioned here simply to highlight its inapplicability to the present matter. In *Taber v. Maine,* 45 F.3d 598 (2d Cir.1995), liability attached to the United States in a drunk-driving case involving a Navy serviceman. The imposition of such liability was based primarily on the respective laws of Guam and California as each addressed the theory of *respondeat superior* and, tangentially, on an admiralty case, *Ira S. Bushey & Sons, Inc. v. United States,* 398 F.2d 167 (2d Cir.1968). Whatever the extension of liability *respondeat superior* imposes in California or Guam, potentially casting employers as "insurers as to all manner of bizarre incidents"—*Nelson,* 838 F.2d at 1284—, such is not the law in

New York. *Taber* itself emphasizes the expansive nature of California's *respondeat superior* statute and its subsequent judicial interpretations. Because of the inapplicability of such to the present matter, as well as of the factual dissimilarities between that case and the present and the clear and well-reasoned guidance of other federal courts that have directly addressed the present issue, this Court is persuaded that *Taber* has no bearing on the instant matter.

This Court also notes and rejects the assertion made by the plaintiff that whether Pritchard was acting within the scope of his employment is a properly and adequately-disputed question of fact and thus improperly disposed of via motion for summary judgment. In support of this contention, the plaintiff cites certain New York case law and notes that *Nelson, Piper* and *Chancellor* involved bench trials in the respective lower courts. Nonetheless and as discussed *supra,* when the actual facts and evidence are not disputed or in conflict, the scope of employment issue is properly dealt with under FRCvP 56. Further, the imposition of liability by the district court in *Piper* was a conclusion of law, not a finding of fact. *Piper,* 694 F.Supp. at 618–619. Additionally, the factual record in *Chancellor* was undisputed and, based on such record, *Chancellor* rejected the "[p]laintiff's *theory* of derivative liability" which was lifted "directly from *Lutz.*" *Chancellor,* 1 F.3d at 439 (emphasis added). *Lutz,* in turn, stated that "the determination of the scope of employment is a question of law." 685 F.2d at 1182. The plaintiff is thus mistaken and this Court concludes that the defendant is entitled to judgment as a matter of law.

This Court, in reaching such conclusion, notes that New York case law states that the "scope of employment" issue is a question of fact, not of law. *See, e.g., Mary KK, supra.* Under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, one could argue that whether an issue is one of law or of fact is a substantive rule and should therefore be applied herein. *See, e.g., Konradi v. U.S.,* 919 F.2d 1207, 1208–1209 (7th Cir.1990) (distinguishing several cases that held that the

"question of law or of fact" issue is procedural and thus federal law is controlling). *Contrais Cole v. Elliott Equipment Corp.,* 653 F.2d 1031, 1033 (5th Cir.1981). *See also Byrd v. Blue Ridge Cooperative,* 356 U.S. 525, 533–540, 78 S.Ct. 893, 898–902, 2 L.Ed.2d 953 (state court rule that an issue was a question of law found not to be controlling; state law cannot alter the character or function of a federal court), *reh'g denied,* 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375 (1958); *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1123–1126 (5th Cir.) (discussion of federal summary judgment standard and allocation of issues between judge and jury in light of *Erie* doctrine), *reh'g denied,* 577 F.2d 1134 (1978). Because the facts and evidence are undisputed and the parties have fully argued their respective decisions, this Court finds that the disposition of this motion would be the same regardless of whether the scope of employment issue was deemed a question of law or of fact. The result of *Lutz* not withstanding, no reasonable jury could find in favor of the plaintiff. Further, whether there are analogous duties imposed under state law as discussed in *Nelson, supra,* is a question of law and dispositive herein under section 1346(b). In line with the law of New York and *Chancellor, Piper* and *Nelson,* this Court holds that Pritchard was not acting within the scope of his employment with regard to the housing and control of Goldie.

Accordingly, there being no other asserted basis for imposing liability upon the defendant herein, it is hereby **ORDERED** that the defendant's motion for summary judgment is granted, that the Amended Complaint is dismissed and that this case shall be closed.